**Edward ORLETT, Plaintiff–Appellee,**

v.

**CINCINNATI MICROWAVE, INC., Defendant–Appellant,**

**James L. Jaeger, et al., Defendants.**

**No. 90–3959.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 5, 1991.

Decided Jan. 23, 1992.

David C. Greer (argued & briefed), Bieser, Greer & Landis, Dayton, Ohio, Gene I. Mesh, Stephen M. Meiser, Gene Mesh & Associates, Cincinnati, Ohio, for plaintiff-appellee.

Frederick J. McGavran (argued & briefed), Frost & Jacobs, Cincinnati, Ohio, for defendant-appellant.

Before MARTIN and NELSON, Circuit Judges, and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

Cincinnati Microwave, Inc. (CMI) is a publicly held Ohio corporation. At the end of 1987 over sixteen million of its common voting shares were outstanding, approximately two-thirds of which were owned by CMI's chief executive officer, James Jaeger. CMI's stock price on the stock market had been consistently dropping from $15.50 per share in 1985 to $4.38 per share just before the company made a tender offer in late 1987. During the downward price slide, Jaeger had made an offer to take CMI private at a price deemed insufficient by outside analysts. Gene I. Mesh, counsel for plaintiff, Orlett, had challenged that Jaeger offer as attorney for a different client.

On December 18, 1987, CMI mailed documents to its shareholders, wherein it offered to purchase up to 6,000,000 of its 16,442,220 shares for $6.00 per share, a substantial premium over the market price from $36 million cash reserves it had amassed.[1] CMI's offering materials stated that tendered shares would be accepted pro rata if the offer were oversubscribed, and that CMI was informed that the majority shareholder, Jaeger, intended to tender all of his shares.

Five days later, Orlett, through his attorney, Mesh, filed his complaint, alleging that the offer would cause CMI's stock to be "delisted" from the stock exchange. Orlett charged that CMI's directors had violated state law fiduciary obligations and § 14(e) of the Securities Exchange Act, 15 U.S.C. § 78n(e), by approving the transaction and not informing shareholders that the transaction would cause the stock to become delisted. Orlett later filed an ,amended complaint alleging that the offer's $6.00 price was unfairly low and that the transaction would deplete the market for CMI stock. Orlett's complaint named CMI as well as its directors as defendants. Orlett proposed to represent a class of all CMI's minority shareholders as of the date of the tender offer.

Orlett sought a preliminary injunction, which was denied, based on the trial court's finding that the transaction would not reduce the marketability of CMI stock. No appeal was taken from this order denying the preliminary injunction. Orlett's motion to certify a class was later denied on the grounds that Orlett did not share in common a claim with the class he purported to represent.

Orlett's theory of the case was that the offering materials represented that Jaeger would tender his shares so that minority shareholders would assume proration would occur, but that Jaeger intended to withdraw his tender and force the minority shareholders out of CMI.[2] In fact, Jaeger tendered all of his shares as represented and was left owning a smaller percentage after the tender and subsequent proration.

The jury returned a verdict for defendants on all claims, and the court entered final judgment for all defendants. Plaintiff then filed a notice of appeal. Shortly thereafter, CMI filed a motion for sanctions for bad faith litigation and violations . of Fed.R.Civ.P. 11 and 28 U.S.C. § 1927. The trial court denied CMI's motion, but granted leave to refile after the appeal was decided by this court.

We affirmed the judgment entered on the verdict of the jury and stated, among other things:

> The plaintiff's basic problem, as we see it, is that he failed to make a showing on which any jury could reasonably have found either that the defendants had done anything wrong or that the defendants had damaged him in any way.

*Orlett v. Cincinnati Microwave, Inc.*, 953 F.2d 224, 230 (6th Cir.1990). CMI then filed a new motion to recover its fees and expenses from Orlett and his trial attorney. Finding no evidence to support the complaint and relying upon the analysis of the case by a panel of this court, the trial court found that Mesh, the attorney, had violated Rule 11:

> Upon careful review of the record of proceedings in this case, the Court finds that prior to filing the complaint, plaintiff's counsel did not undertake a reasonable inquiry into whether plaintiff's claims were well-grounded in fact. Plaintiff failed to present any probative evidence to support his claim that Jaeger did not intend to tender his shares. Neither did plaintiff present any evidence from which the jury could have found a material misstatement or omission in the tender offer as supplemented. Plaintiff also offered no proof that the tender offer had the effect of significantly reducing the market for defendant's stock, that the stock price set in the tender

---

**1.** Orlett's counsel contends that the company could have distributed the cash pro-rata to all shareholders.

**2.** This theory labelled the action of the corporation and its principal shareholder as a "sucker punch."

offer was unfair, or that the transaction was not calculated to serve the best interests of the corporation and its shareholders.

The district court then directed Mesh to show cause why CMI's claimed fees and expenses of $168,419.37 should not be awarded. The district court did not address CMI's motions for violations of 28 U.S.C. § 1927.

Mesh filed a memorandum that neither questioned the amount of fees and expenses CMI claimed, nor presented any evidence on the financial ability of Mesh to pay them. Instead, Mesh brought evidence that he had researched the case, incurred out-of-pocket expenses, and hired a financial expert to evaluate the case as proof of his good faith. He denied that there was any basis for monetary sanctions. The district court then announced the following ruling on the Rule 11 sanctions question:

It is obvious that a Rule 11 sanction must be based on a case by case inquiry. This local bar, however, is entitled to know the views on sanctions held by this Court. A three tier form of assessment seems to be appropriate. For those counsel who are being sanctioned for the first time, the amount should be between One Dollar ($1.00) and Ten Thousand Dollars ($10,000.00). For those counsel being sanctioned for the second time, the range should be above Ten Thousand Dollars ($10,000.00) and below One Hundred Thousand Dollars ($100,000.00). In the event a third sanction is imposed, it should be in excess of One Hundred Thousand Dollars ($100,000.00).

The trial judge then awarded sanctions against plaintiff's trial attorney as a first offender, but having great experience in securities litigation, in the amount of $10,000. CMI appealed the amount of the Rule 11 sanctions and the denial of its motions for bad faith litigation and violation of 28 U.S.C. § 1927.

CMI challenges the district court's failure to rule on its motion for sanctions under 28 U.S.C. § 1927 and for claimed bad faith. We review the district court's decision on an abuse of discretion standard generally. *In re Ruben*, 825 F.2d 977, 984–85 (6th Cir.1987), *cert. denied sub nom. Swan v. Ruben*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988).

CMI maintains that the district court's failure to make factual findings on its claim of bad faith or on the § 1927 [3] claims is abuse of discretion.

While we endorse the view that sanction proceedings should not be allowed to bloom into protracted satellite litigation, a district judge faced with a sanction motion must make certain findings in determining that an award is appropriate. Careful analysis and discrete findings are required, no matter how exasperating the case.

*In re Ruben*, 825 F.2d at 990–91 (citation omitted). While a district court judge cannot award sanctions without giving the factual basis for that award, *Ruben* does not say that the court must make factual findings to explain why it did not order sanctions. Even if the district court had found other bases for sanctions were valid, there is no assurance that greater sanctions would have been awarded based on bad faith or violation of § 1927.

Federal Rule of Civil Procedure 52(a) states that "[i]n all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law...." We have not interpreted Rule 52 to require district courts explicitly to treat each issue raised. In *Grover Hill Grain Co. v. Baughman–Oster, Inc.*, 728 F.2d 784 (6th Cir.1984), this court was asked to find that a certain individual was an agent of the manufacturer-defendant. "Despite the fact that the appellant raised this issue at trial, the District Court Judge made no specific finding as to [the agency issue]." *Id.* at 792. We re-

---

**3.** 28 U.S.C. § 1927 (Supp.1991) provides:
Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

fused a request that the issue be remanded.

This Court has enunciated a liberal standard for reviewing the adequacy of a District Court's findings. Findings should be comprehensive and relevant to the issues so as to provide a rational basis for the trial court's decision. It is not necessary for the District Court Judge to prepare elaborate findings on every possible issue raised at trial. However, there must be findings, in such detail and exactness as the nature of the case permits, of subsidiary facts on which an ultimate conclusion can rationally be predicated. The findings should be explicit so as to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the grounds on which the trial court reached its decision.

*Id.* at 792–93 (citations omitted); *see also Kasuri v. St. Elizabeth Hosp. Medical Center,* 897 F.2d 845, 850–51 (6th Cir.1990).

## I. *SANCTIONS BASED UPON BAD FAITH*

The bad faith considered by courts construing this exception generally falls within one of three categories: (1) bad faith occurring during the course of the litigation; (2) bad faith in bringing an action or in causing an action to be brought; and (3) bad faith in the acts giving rise to the substantive claim. *Shimman v. Int'l Union of Operating Eng., Local 18,* 744 F.2d 1226, 1230 (6th Cir.1984) (footnote omitted), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). Since there is no claim that attorney Mesh did anything in bad faith that made this suit necessary, only the first two categories discussed in *Shimman* are relevant. CMI claims that Mesh acted in bad faith by bringing this suit since he had no evidence to support the claims brought and that he had pursued this meritless claim in bad faith.

In support of its contentions, CMI cites the district court's opinion in its show cause order that the case lacked merit and "[i]t was known to be [meritless] almost from the beginning by plaintiff's counsel, who was a specialist in security fraud litigation." CMI notes that Mesh abandoned all the "sucker-punch" claims he had raised in Orlett's complaints in favor of another theory at trial, and that he was unwilling to settle despite the fact that Orlett's expert had estimated that Orlett lost less than the amount offered by CMI to settle the suit.

Mesh counters that he was forced to abandon his claim that the price offered shareholders was insufficient when his expert was precluded from testifying on this contention. He also argues that he was unwilling to settle for the amount offered by CMI because he was appealing the district court's refusal to certify a class and had to consider the class action aspect of the case. Finally, Mesh argues that he acted in good faith and points out the inferences he drew from the circumstances, noting in conclusion that the claims were not defeated by a motion to dismiss or for summary judgment.

Mesh intended to offer an expert to testify that Jaeger had benefitted from the transaction and that this was evidence of self-dealing. The court refused to allow this evidence because it had bifurcated liability from damages and felt evidence of damages at the liability stage would be prejudicial. We concluded that the trial court had not abused its discretion in refusing to certify the class, noting, however, that extended discussion was unnecessary because Orlett's claim was meritless.[4]

Although the question of required findings under the claim of bad faith is in doubt, we will REMAND the case for some resolution in this regard because of the remand necessary under Rule 11.

---

**4.** Because of the holes punched in the plaintiff's theory when Mr. Jaeger tendered all his stock and sold his pro rata share, it became clear that the plaintiff had set sail in a ship that was going to sink. The presence or absence of additional passengers could not have affected the seaworthiness of the doomed vessel. *Orlett v. Cincinnati Microwave, Inc.,* 953 F.2d 224, 228 (6th Cir.1990).

## II. *SECTION 1927*

We have held that sanctions under § 1927 may be appropriate when an attorney reasonably should know that a claim is frivolous, "simple inadvertence or negligence that frustrates the trial judge will not support a sanction under section 1927." *Ruben*, 825 F.2d at 984. Rather,

> [t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.

*Id.* CMI argues that Mesh knew but also should have known that his claim was meritless, and thus he violated § 1927, based upon the finding that Mesh knew the claim was without merit "almost from the beginning." Mesh responds by pointing to the extended procedural course followed in this litigation, including an application for preliminary injunction and a motion for class certification.

■ A district court may find a violation under Rule 11 and still not find a basis for violation of § 1927. In this case the district court found that Mesh failed to undertake a reasonable inquiry into the basis for Orlett's claim. This finding would constitute a basis for Rule 11 sanctions but it does not indicate that the proceedings were intentionally or unreasonably multiplied. *See Jackson v. Law Firm of O'Hara, Ruberg, Osborne & Taylor*, 875 F.2d 1224, 1229 (6th Cir.1989) (good faith not a defense to Rule 11). We again will REMAND for findings under § 1927 in view of our remand indicated on the Rule 11 issue.

## III. *RULE 11 SANCTIONS*

■ The district court's determination of the appropriateness and level of Rule 11 sanctions is reviewed for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). The propriety of some Rule 11 sanctions is not an issue in this appeal. Rather, the dispute involves the amount of sanctions imposed under Rule 11.

■ A sanction under Rule 11 may include reasonable attorney fees. The principal goal of Rule 11 sanctions is deterrence with compensation being a secondary goal. *Jackson*, 875 F.2d at 1229. The district court must consider whether the complained of actions were brought promptly to its attention (a question of mitigation), and must determine the ability of the sanctioned attorney to pay. "Courts should impose the least severe sanction that is likely to deter." *Jackson*, 875 F.2d at 1230. It is clear that CMI has continually attempted to terminate this litigation at an early stage and also promptly brought a request for Rule 11 sanctions.

Since, "in deciding the nature and extent of sanctions to impose, the district court is given wide discretion," *INVST Financial Group v. Chem–Nuclear Systems*, 815 F.2d 391, 401 (6th Cir.), *cert. denied*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987), the district court could appropriately consider all relevant factors. A claim for reimbursement of all its costs and legal fees requires an investigation into reasonableness of such costs and fees. *See, e.g., LeMaster v. United States*, 891 F.2d 115, 120 (6th Cir.1989).

■ We find troubling and without precedential support the district court's approach to its determination of Rule 11 sanctions in this case. It relies exclusively on the sanctioned attorney's prior experience and history of sanctions in a particular district court. This approach ignores ability to pay, the degree of bad faith or want of diligence, the amount of fees and costs resulting from the attorney's (or party's) inappropriate conduct, mitigating conduct, if any, and that amount necessary and effective to bring about deterrence under all the particular circumstances.[5]

---

**5.** The district court itself recognized correctly that "a Rule 11 sanction must be based on a case by case inquiry."

Recently, a number of courts of appeals have agreed that deterrence is the most important goal of amended Rule 11. See, *e.g., Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 877 (5th Cir.1988) (en banc); *Brown (Neely) v. Federation of State Medical Boards of the United States,* 830 F.2d 1429, 1438 (7th Cir.1987); *Donaldson v. Clark,* 819 F.2d 1551, 1556 (11th Cir.1987) (en banc); *In re Yagman,* 796 F.2d 1165, 1183 (9th Cir.), *amended,* 803 F.2d 1085 (9th Cir. 1986), *cert. denied,* 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987).

American Judicature Society, Studies of the Justice System, *Rule 11 in Transition: The Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11,* p. 12 (1989).

■ The task force above cited also added an additional emphasis with which we agree:

> Rule 11 sanctions should not be viewed as a general fee-shifting device. By and large federal courts are bound by the "American Rule," requiring parties to shoulder their own legal expenses.... This Rule applies in the absence of specific statutory authorization for thrusting the winner's counsel fees on the losing party....
>
> The Rules Enabling Act, 28 U.S.C. § 2072, bars enactment of substantive provisions as rulemaking. The Advisory Committee, aware of this limitation, consequently did not intend to effect a major change in the American Rule in the guise of expansive Rule 11 sanctions. Complete or partial fee-shifting is but one form of disciplinary action which a court may invoke in appropriate circumstances.

*Id.* at 12.

■ We cite with approval also from this same report proper Rule 11 considerations in imposing sanctions:

> In determining an appropriate sanction under amended Rule 11, the court should consider the nature of the violation committed, the circumstances in which it was committed, the circumstances (including the financial state) of the individual to be sanctioned, and those sanctioning measures that would suffice to deter that individual from similar violations in the future. The court should also consider the circumstances of the party or parties who may have been adversely affected by the violation.

*Id.* at 40.

■ We would remind the district court, as stated in *Vairo,* Rule 11, *A Critical Analysis,* 118 F.R.D. 189, 229, "the overall goal of Rule 11 is to contribute to lessening the costs of litigation, most courts are trying to insure that sanctions are fair, reasonable and bear some relation to the party or attorney's ability to pay and responsibility for the offending litigation." Equitable considerations and the "least severe sanction adequate to serve the purpose" should be factors in the sanction determination. *Vairo, supra,* 118 F.R.D. at 230, 231; *see also Brown v. Federation of State Medical Boards,* 830 F.2d 1429, 1439 (7th Cir. 1987). This standard would also require the district court to consider, where appropriate, non-monetary sanctioning, such as reprimand, censure, referral to an appropriate disciplinary committee, and the like.

In summary, we REVERSE the sanction award made under Rule 11, and we REMAND to the district court for further consideration of sanctions sought on all the bases set out by CMI, including Rule 11, and for a redetermination of reasonable sanctions guided by the principles herein set out.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring.

While I concur with the bulk of the majority's opinion and the outcome, I disagree with the majority's analysis on two points. First, I have personal doubts as to the propriety of the majority's holding that rejects Mesh's class action certification defense. Mesh argues that the class action certification he sought earlier in the proceedings mitigates the "bad faith" claim against him. Admittedly, another panel of this court resolved the class certification issue on the first appeal in this case; Judge Edwards, not I, sat with Judge Wellford and Judge Nelson on that appeal. How-

ever, even though ultimately the class was properly deemed "not certified," this does not necessarily mean that Mesh's bad faith defense is without merit.

My second point of difference with the majority concerns our directions to the district court on the subject of the Rule 11 sanctions. As discussed by the majority, the district court determined its own standard of frivolity and imposed sanctions, using a legally unsupported theory. This was legal error and I wholeheartedly agree with the majority's analysis to that effect. The district court failed to take into account the deterrent effect of the Rule 11 sanctions and consequently ignored the overriding intent of Rule 11. Compensation to a harmed party is a secondary goal of Rule 11. *See Jackson*, 875 F.2d at 1229. However, I believe the majority has inadequately instructed the district court as to the current interpretation of Rule 11 sanctions and, more importantly, the emphasis that should be given to considering non-monetary as well as monetary sanctions.

A recent survey of five federal district courts by the Federal Judicial Center revealed that Rule 11 issues arise in two to three percent of all cases. *Federal Judicial Center Directions: Special Issue on Rule 11*, p. 3 (Nov. 1991). The Advisory Committee commented on the conflicting views of district judges toward monetary versus non-monetary sanctions:

> The Advisory Committee expressed concern that the size of monetary sanctions might over-deter lawyers making them reluctant to assert marginally well-founded contentions for fear of a large sanction. They also questioned whether non-monetary sanctions would serve the deterrent purpose of the rule and at the same time fall evenly on lawyers of different financial means.

*Id.* at p. 17. Nonetheless, the FJC expressed a preference in its report for non-monetary sanctions, concluding that there was too much emphasis on monetary sanctioning by district judges and not enough emphasis on non-monetary sanctioning. *Id.* at pp. 5, 18, and 38. The committee found that "fee awards had become the norm and that non-monetary sanctions have been used too rarely." *Id.* at 38.

District courts are permitted wide discretion under Rule 11 to make "appropriate sanctions." This discretion, however, should not be expressed in the form of monetary sanctioning that greatly outweighs other forms of sanctioning. The FJC demonstrates its concern in this regard in the proposed Amendment to Rule 11. The proposed Amendment emphasizes that monetary awards should be statutorily limited to what is sufficient to deter comparable conduct by persons similarly situated and that, much more often than is the case now, non-monetary awards should be used over monetary awards. *Id.* at 38–39 ("The Committee notes underscore the availability of non-monetary sanctions (e.g. reprimand or censure, educational programs, referral to disciplinary authorities) ...").

Application of Rule 11 sanctions as suggested by Judge Rubin would have a disastrous, inhibitory effect on the evolution of law. Rule 11 was enacted to deter frivolity, not to deter attorneys from "pursuing reasonable arguments for the application of existing law as well as for changes in the law." *Id.* at p. 27. Our system of law would stagnate and cease to develop if people were sanctioned for legitimately attempting to define legal limits and promote progressive legal change. A case like *Brown v. Board of Education* could never occur in such a climate of repression. Rule 11 is designed to help keep dispute resolution on track. It should not be used to impede the opportunity to utilize the court system to solve problems. District courts must apply Rule 11 even-handedly, by resolving each case on its merits. Fixed or rigid formulas that fail to take into account the individual issues and facts of each case are contrary to our system of law. Courts must necessarily consider non-monetary as well as monetary sanctions in any Rule 11 analysis. Judge Rubin has always been in the forefront of innovation; however, innovation must be tempered by fairness. Under the present prevailing interpretation of

Rule 11 sanctions, he has misconstrued his discretion under the Rule.