986 F.2d 1421
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert COLTON, et al. Plaintiffs-Appellants,
v.
MEMORIAL DRIVE TRUST, et al. Defendants-Appellees.
 No. 92-1006.
 United States Court of Appeals, Sixth Circuit.
 Feb. 8, 1993.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Robert Colton appeals from a district court's order granting Rule 11 sanctions against him. Finding no abuse of discretion in the district court's actions, we affirm.
 
 
 2
 * Appellant Robert Colton and his mother invested in the Cartex Corporation's 1984 securities offering. Cartex made a second securities offering in 1987, and once again Colton and his mother purchased stock. Defendants-Appellees, Carl Oosterhouse and the Grand Rapids law firm of Varnum, Riddering, Schmidt, and Howlett ("Varnum"), of which Oosterhouse is a partner, acted as counsel for this second offering. Oosterhouse also was the Secretary of Cartex. The law firm of Dykema Gossett ("Dykema") prepared the prospectus for the first offering.
 
 
 3
 In 1989, Colton alleges that he learned that Cartex had dissipated his investment and misrepresented various facts. Based upon this information, plaintiffs filed a complaint. The law firm of Hoops Management, P.C. ("Hoops") represented the plaintiffs. The complaint alleged securities law violations, state common law violations, and RICO. Two of the counts in the complaint, one and seven, arise solely out of the 1984 offering. These counts specifically stated that Varnum prepared the relevant prospectus. However, the Dykema law firm, not Varnum, prepared this offering. This incorrect allegation by Colton and Hoops led to the sanctions that are the subject of this appeal.
 
 
 4
 In 1987, soon after the second offering, Colton contacted Oosterhouse to express concern over the company. At that time, Oosterhouse told Colton that the law firm that handled Oosterhouse's personal dealings, Dykema, was the firm that represented Cartex in 1984. Douglas Kiesewetter Jr., President of Cartex, also told Colton on numerous occasions between 1984 and 1988 that Dykema prepared the first offering. Colton taped one of these conversations with Kiesewetter, and wrote down the information on a sheet of paper.[1] Nonetheless, when asked by Hoops, Colton stated that he believed that Varnum prepared the 1984 prospectus. Based upon this statement, Hoops alleged in the complaint that Varnum was responsible for the misrepresentations contained in the 1984 prospectus.
 
 
 5
 Because this allegation had no basis in fact, Oosterhouse and Varnum immediately filed a motion for summary judgment as their first responsive pleading, and a request for sanctions for having to defend against the allegation. Defendants brought this motion on October 27, 1989. Defendants supported the motion with affidavits stating that they did not prepare the 1984 document. In response to this motion, plaintiffs filed a motion to extend time to answer the motion and sought leave to take the deposition of Oosterhouse. The motion stated that "plaintiffs have information that defendants were involved with Cartex before July, 1984," the time of the first prospectus. Based upon these statements, the court granted plaintiffs' motion for extension of time. Plaintiffs then took the deposition of Oosterhouse on January 22, 1990. At the deposition, plaintiffs' counsel failed to ask whether Varnum prepared the 1984 document. Thereafter, on February 7, 1990, the plaintiffs filed a second motion to extend time to answer the Varnum motion. Hoops again stated that it had information that Varnum prepared the first document. The court granted the motion.
 
 
 6
 After further briefing, plaintiffs filed a motion on March 6, 1990, withdrawing their motion to extend time, and admitting that they had no information showing that Varnum prepared the 1984 prospectus. Accordingly, the court dismissed counts one and seven against Oosterhouse and Varnum with prejudice.
 
 
 7
 Appellees then renewed their motion for Rule 11 sanctions against both Colton and Hoops. Colton's attorneys filed affidavits stating that Colton told them that Varnum was the only firm he was aware of that had represented Cartex prior to 1985. Colton filed an affidavit stating that he did not know that Dykema, not Varnum, prepared the 1984 offering.
 
 
 8
 In response to the affidavits presented by Colton and his attorneys, appellees offered evidence that Colton knew who prepared the 1984 prospectus. Douglas Kiesewetter Jr., President of Cartex, filed an affidavit stating that he informed Colton numerous times between 1984 and 1988 that Dykema prepared the document. Oosterhouse filed a similar affidavit. Appellees also produced Colton's 1984 subscription agreement, which has Dykema's 1984 letterhead on the legend. Finally, appellees showed that Colton contacted Frank Zinn, an attorney with Dykema, about possibly representing him in his action against Cartex. Zinn informed plaintiff that Dykema could not represent him because the firm had worked for Cartex. Colton then filed a supplemental affidavit, in which he admitted all of the appellees' allegations. However, Colton stated that he never "internalized" this information.
 
 
 9
 In further support of Rule 11 sanctions, defendants submitted Colton's personal income statement showing a net worth of 19 million dollars. Varnum further submitted declarations that during a deposition, Colton's attorneys had stated that a $70,000 sanction would be "petty cash." Appellees also documented their fees.
 
 
 10
 On September 12, 1991, the court conducted a Rule 11 hearing. At the conclusion of the evidence, the court ruled that sanctions were proper against Colton. The court stated that it "is convinced, based on all the pleadings here, that Dr. Colton was aware of the fact that the Varnum firm had not prepared the first offering ..." The court further stated that the main culprit was Colton, not his attorneys. The court noted that defendants repeatedly had told Colton that Varnum did not prepare the 1984 prospectus, and that Colton actually went to the trouble to tape one of these conversations and to take notes. The court further reasoned that sanctions were necessary "both from the avenue of deterrence as well as punishment." The court awarded sanctions in the amount of $38,000. Appellees' fees in this action were $35,019.20.
 
 
 11
 Appellant then filed a timely appeal of the court's sanction order. Colton has two arguments. First, that sanctions were improper. Second, assuming that the court properly awarded sanctions, appellant contests the amount.
 
 II
 
 12
 This court reviews Rule 11 sanctions for an abuse of discretion. Cooter & Gell v. Hartmarx Corp, 496 U.S. 384, 110 S.Ct. 2447 (1990); Orlett v. Cincinnati Microwave, Inc., 954 F.2d 414 (6th Cir.1992). Plaintiff's primary argument is that he had a good-faith belief in his statement that Varnum was the only firm that represented Cartex prior to 1985. He honestly did not know that Dykema prepared the 1984 prospectus. However, Colton's position misconstrues Rule 11. Rule 11 was thoroughly revised in 1983. The purpose behind the changes was to encourage the use of sanctions where appropriate. Fed.R.Civ.P. 11 advisory committee note, reprinted in 97 F.R.D. 165, 198 (1983). These amendments enlarge the scope of the Rule by imposing an objective standard of conduct. Business Guides, Inc. v. Chromatic Communications Enters., Inc., 498 U.S. 533, 111 S.Ct. 922 (1991); See also Schwarzer, "Sanctions under the New Federal Rule 11--A Closer Look," 104 F.R.D. 181, 187 (1985) ("There is no room for a pure heart, empty head defense under Rule 11."). This objective test applies for parties and attorneys. Business Guides, 498 U.S. at ----, 111 S.Ct. at 932.
 
 
 13
 The present case is very similar to Business Guides. In that case, a publisher of business directories brought suit against a competitor for copyright infringement. The basis of the allegation was that defendant's directory incorporated a number of typographical errors that had been deliberately inserted in plaintiff's directory. Plaintiff alleged that this fact proved that defendant stole the directory. Eventually, the court discovered that there were no typos in either directory. Accordingly, there was no factual basis for plaintiff's complaint.
 
 
 14
 The court sanctioned the plaintiff. The plaintiff argued that he honestly believed that typos existed and that defendant copied them into his directory. The Supreme Court ruled that an honest mistake was irrelevant. Rather, the inquiry focused upon an objective test of whether the mistake was reasonable. In that case, the Court ruled that the mistake was not reasonable. Accordingly, Rule 11 sanctions against the represented party were proper. Ibid.
 
 
 15
 The present case is similar. In both instances plaintiffs made mistakes of fact. They told their attorneys that the facts were "X," and later learned that the facts were "Y." Moreover, in both cases, plaintiffs should have discovered the truth. In Business Guides, the plaintiff easily could have discovered the validity of the allegations. In the present case, numerous parties told Colton that Dykema represented Cartex in the past. It was not reasonable for Colton to tell his attorney that he did not believe that any attorneys other than Varnum ever represented Cartex. Because sanctions were upheld in Business Guides, the court acted within its discretion in the present case.
 
 
 16
 Colton also argues that his attorneys should have uncovered the inaccuracy in the complaint. Although this likely is true, it also is irrelevant. As discussed in Business Guides, Colton had an independent Rule 11 duty to ensure the reasonableness of his allegations. Business Guides, 498 U.S. at ----, 111 S.Ct. at 930. Colton is ultimately responsible for his complaint. Accordingly, the court's decision to award sanctions was not an abuse of discretion.
 
 III
 
 17
 Appellant argues that the sole propose of Rule 11 sanctions is deterrence. In this case, because the award closely approximated defendants' fees, appellant argues that the court was improperly attempting to compensate. Appellant's position is incorrect. Although deterrence is the primary goal of sanctions, reimbursement of fees and costs incurred by the other side is proper absent equitable considerations calling for a contrary amount. Danvers v. Danvers, 959 F.2d 601, 605 (6th Cir.1992); Jackson v. Law Firm of O'Hara, Ruberg, et al., 875 F.2d 1224, 1232 (6th Cir.1989). Moreover, a district court has "wide discretion" in determining the amount of the sanctions. Orlett, 954 F.2d at 419 (6th Cir.1992); Lemaster v. United States, 891 F.2d 115 (6th Cir.1989). The court certainly acted within its discretion when it awarded $38,000.
 
 
 18
 Appellant also argues that defendants are under a duty to mitigate their damages and defendants failed to do so in this instance. See Dubisky v. Owens, 849 F.2d 1034 (7th Cir.1988) (discussing a party's duty to mitigate its damages in a Rule 11 context). Although a duty to mitigate damages does exist, the appellees certainly complied with this requirement. Soon after plaintiffs brought suit, the appellees responded with a motion for summary judgment for all claims arising out of the 1984 prospectus. This motion was appellees' first responsive pleading. At every possible turn, appellees tried to notify Colton that they were not the proper defendants on the 1984 prospectus. Addressing this same argument, the trial court stated that "on a fairly regular basis the defendants came in here and said, Hey, we didn't do it ..., but the plaintiff would say, No, we have something...." Because the appellees attempted to mitigate damages, appellant's position is not persuasive.
 
 
 19
 Colton next argues that the court failed to consider his ability to pay. Ability to pay is a relevant factor and it constitutes an abuse of discretion for the trial court to ignore this factor. Jackson, 875 F.2d at 1230. In this case the court did consider Colton's ability to pay. Appellees presented affirmative evidence that Colton had a net worth of 19 million dollars. Appellees also submitted evidence that Colton's attorneys stated that a $70,000 sanction was "petty cash" to the appellant. Accordingly, sufficient evidence existed for the court to rule that the $38,000 sanction was within Colton's ability to pay.
 
 
 20
 Moreover, Colton failed to supply any opposing financial evidence, even at the invitation of the court. At the Rule 11 hearing, Colton's attorney stated that he would be submitting data to the court to counter appellees' financial declarations. Plaintiff never submitted this evidence. In this case, the court did not fail to consider ability to pay; rather, appellant failed to supply any information to oppose defendants' position. "Although ability to pay must be considered by a district court ... inability to pay should be treated like an affirmative defense, with the burden upon the party being sanctioned to come forward with evidence of their financial status." Dodd Insurance Services, Inc. v. Royal Insurance Company of America, 935 F.2d 1152, 1160 (10th Cir.1991). Appellant failed to satisfy his burden. Accordingly, the district court's decision was proper.
 
 
 21
 Finally, Colton argues that his attorneys violated Rule 11, and that they must contribute to the award. This position is incorrect. Sanctions are within the discretion of the trial court, and the court ruled that Colton, not his attorneys, was culpable.
 
 
 22
 For the reasons stated, we AFFIRM the district court's award of Rule 11 sanctions.
 
 
 
 [1]
 During discovery for the Rule 11 sanctions, appellees discovered the note. Colton had hand-written, underlined, and drawn an arrow to the fact that Thomas Vaughn of Dykema prepared the 1984 prospectus