47 F.3d 1169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Patrick McCLELLAND, Plaintiff-Appellant,
v.
CITY OF HIGHLAND PARK, et al., Defendants-Appellees.
 No. 93-2346.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1995.
 
 Before: ENGEL, MARTIN, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Patrick McClelland appeals the district court's judgment for the defendants in his 42 U.S.C. Sec. 1983 lawsuit. He claims that the district court erred in refusing to reinstate the City of Highland Park as a defendant, after previously granting summary judgment in its favor. McClelland also challenges the district court's conclusion that his exercise of his First Amendment rights was not a substantial or motivating factor in the decision to discharge him. Accordingly, he asks this Court to reverse that court's decision, enter judgment in his favor, and remand for a new trial to determine damages. For the following reasons, we affirm the judgment of the district court.
 
 
 2
 McClelland, an Assistant Director of Public Safety, was discharged by the City of Highland Park, effective July 31, 1990. Prior to this, financial difficulties compelled Highland Park to merge its police and firefighting forces into a single public safety unit in 1986. McClelland, who had been working simultaneously as a firefighter and a parimutuel clerk, was among a group of employees concerned about protecting their outside employment. The collective bargaining agreement reflected their concern, providing:
 
 
 3
 At its sole option and discretion, the City agrees to consider extraordinary conditions caused by prior long-term outside employment of any member of the Union. The City may, as its sole option and discretion on an individual basis, develop and apply special work schedules for such person.
 
 
 4
 At first, McClelland allegedly received periodic oral promises that he could continue his outside work. However, the situation changed after Mayor Martha Scott hired defendant Marshall Emerson, Jr., as Director of Public Safety and defendant John Colbert as Deputy Director of Public Safety. As a part of his effort to unify the Department of Public Safety, Emerson issued regulations requiring public safety officers to obtain his pre-approval for outside employment on February 29, 1988. The Union's Unfair Labor Practice Charge challenging this directive was dismissed on December 2. Other unresolved issues concerning operations policies were submitted to binding arbitration.
 
 
 5
 In March 1988, McClelland applied for permission to continue his outside employment, which petition was denied by Emerson late in 1988. At trial, McClelland testified that he received this denial in December. Now, however, he claims that he received the denial in November--prior to the resolution of the Union's Unfair Labor Practice charge. McClelland allegedly filed another application in January 1990, to which he never received a response.
 
 
 6
 Meanwhile, McClelland had begun to assume a leadership role in the Union. As the Union's vice-president, he voiced certain complaints at a City Council meeting in November 1988. Although McClelland was charged with making false statements as a result, a hearing officer found him not guilty. Then, in the wake of a May 1989 fire, McClelland gave a televised interview in which he made remarks that Emerson thought were detrimental to the Department of Public Safety in view of its status. The next day, Emerson warned McClelland that he would "steal [his] dreams" if McClelland persisted in criticizing the Department. After a May 1990 fire, McClelland was allegedly told that he would lose his badge if he spoke to the media. Nevertheless, McClelland, who was then president of the Union, gave an interview criticizing the Department. He was reassigned from fire duties to police patrol duties a day later.
 
 
 7
 On June 25, 1990, McClelland testified at an arbitration hearing on behalf of a fellow Public Safety officer, publicly stating that he and others still held outside jobs. Emerson then ordered all Public Safety officers holding outside jobs to notify the Deputy Director or face discharge. Emerson also charged McClelland with disobeying the order not to engage in outside employment without authorization. Over McClelland's objections, Colbert presided at the July 20, 1990, disciplinary hearing that resulted in McClelland's termination.
 
 
 8
 At the Union's request, the case was then submitted to arbitration. After finding that the prior arbitration award "deemed" McClelland to be in compliance with the rules and regulations regarding outside employment and determined that McClelland had been "grandfathered" for outside employment, the arbitrator reinstated McClelland with back pay, seniority, interest, and costs in April 1991.
 
 
 9
 McClelland's suit, filed in state court on October 21, 1991, was removed to the district court on November 22. The district court granted the City of Highland Park's motion for summary judgment on August 26, 1992, finding that McClelland failed to allege any specific custom or policy of the City that caused a violation of his rights, as required by Monell v. New York Dep't of Social Servs. 436 U.S. 658 (1978), and that there was no evidence of inadequate training or deliberate indifference by the City. City of Canton v. Harris, 489 U.S. 378 (1989). McClelland's subsequent motion for reconsideration of the dismissal was denied.
 
 
 10
 The district court declared a mistrial on October 15, after learning that the jury was unable to reach a verdict. When the case again came up for trial on January 6, 1993, the parties agreed to waive a jury trial and have the district court decide the case on the basis of the original trial transcripts.
 
 
 11
 On February 3, the district court entered its judgment, finding that there was "No Cause of Action." The court determined that after weighing the evidence, it could not say "that it [wa]s more likely true than not true that plaintiff's exercise of his First Amendment rights was a substantial or motivating factor in the decision to discharge him." While mentioning evidence that McClelland's outside job was "common knowledge," the court credited Emerson's testimony that he first learned of McClelland's outside job on June 25, 1990, when McClelland testified at a fellow employee's arbitration hearing. The court highlighted Emerson's and Colbert's testimony that they did not know McClelland's outside employment had been "grandfathered" at the time they discharged him. In addition, the court acknowledged that "there is no question that defendants did not believe it was proper for plaintiff to criticize the department and its administration publicly." The court also noted, however, that the administration challenged the unit's outside employment practice "well before" McClelland spoke out publicly for the first time.
 
 
 12
 On September 29, 1993, the court denied McClelland's subsequent motion for reconsideration of its decision and its prior dismissal of the City of Highland Park. According to the court, McClelland's reconsideration motion merely challenged "matters clearly within the province of the Court as fact finder." This timely appeal followed.
 
 
 13
 McClelland first challenges the district court's grant of summary judgment, finding no liability on the part of the City of Highland Park. This Court reviews a district court's grant of summary judgment de novo. Moore v. Holbrook, 2 F.3d 697, 698 (6th Cir.1993). We believe the district court was proper in granting summary judgment in favor of the City of Highland Park. For a municipality to be held liable under Section 1983, "a municipal policy or custom must be the moving force behind the constitutional injury." Searcy v. City of Dayton, 38 F.3d 282, 287 (6th Cir.1994). Monell requires a plaintiff to "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." Garner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir.1993) (citation omitted), cert. denied, 114 S.Ct. 1219 (1994).
 
 
 14
 McClelland failed to raise a genuine issue of material fact concerning whether the actions taken against him were official decisions of the City of Highland Park. His affidavit stating that Colbert had become the Administrative Assistant to the Mayor at the time he participated in the decision to terminate Colbert does not suffice. We agree with the district court's conclusion:
 
 
 15
 The fact that plaintiff now states that Colbert was no longer second in command in the Public Safety Department, but reported to the Mayor at the time of plaintiff's termination, does not demonstrate that a decision or policy of the City was a moving force behind the alleged violation of plaintiff's First Amendment rights.
 
 
 16
 Moreover, the failure to take Colbert's deposition does not relieve McClelland of his duty to come forward with evidence that creates a genuine issue of material fact. McClelland's bare claim that Robert Gordon, the Director of Labor Relations and Personnel, took retaliatory action against him does not create such a genuine issue, nor does the testimony of Colbert and the Mayor indicating that the Mayor authorized Colbert to act on her behalf.
 
 
 17
 Federal Rule of Civil Procedure 52(a) provides that "[i]n all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law." We have not interpreted Rule 52 to require district courts to treat each issue raised explicitly. In fact, we have enunciated a liberal standard for reviewing the adequacy of a lower court's findings:
 
 
 18
 Findings should be comprehensive and relevant to the issues so as to provide a rational basis for the trial court's decision. It is not necessary for the District Court Judge to prepare elaborate findings on every possible issue raised at trial.
 
 
 19
 Orlett v. Cincinnati Microwave, Inc., 954 F.2d 414, 417 (6th Cir.1992) (quoting Grover Hill Grain Co. v. Baughman-Oster, Inc., 728 F.2d 784, 792 (6th Cir.1984)).
 
 
 20
 We accept a district court's factual findings unless they are clearly erroneous. Fed.R.Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Moreover, the clearly erroneous standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court." Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985).
 
 
 21
 We find that the district court opinion satisfies Rule 52(a). After presiding over the first trial, the court assessed the conflicting testimony presented and wrote an opinion that gives us a clear understanding of the basis of its decision. Orlett, 954 F.2d at 417. That decision was not clearly erroneous.
 
 
 22
 The judgment of the district court is AFFIRMED.