**Kenneth MITAN, Plaintiff–Appellant,**

**v.**

**INTERNATIONAL FIDELITY INSURANCE CO., Defendant–Appellee.**

**No. 00–1554.**

United States Court of Appeals, Sixth Circuit.

Oct. 3, 2001.

Before BOGGS and DAUGHTREY, Circuit Judges; and WEBER, District Judge.[*]

PER CURIAM.

Plaintiff–Appellant Kenneth Mitan ("Mitan") appeals from an order of the district court, dismissing with prejudice Mitan's complaint for breach of contract and conversion, and barring Mitan or related potential parties in interest from filing further actions arising out of the same facts. For the reasons that follow, we affirm.

I.

On December 23, 1999, Mitan filed a complaint for breach of contract and conversion against Defendant–Appellant International Fidelity Insurance Company

---

[*] The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

("IFIC") in the United States District Court for the Eastern District of Michigan, alleging jurisdiction pursuant to 28 U.S.C. § 1332. Although the complaint contained a conclusory allegation that the amount in controversy exceeded $75,000, the only damages enumerated therein were the alleged conversion of $22,000 tendered by Mitan as collateral for IFIC's surety obligation on a $29,000 appeal bond.

After reviewing the complaint, the Court *sua sponte* directed Mitan to show cause why the matter should not be dismissed for lack of subject matter jurisdiction. Mitan responded with a document addressing the parties' diverse citizenship and the non-prejudicial nature of a prior dismissal, but failed to elaborate upon the alleged amount in controversy.

The court thereafter issued a second show cause order, directing Mitan to "specifically address the issue of whether the matter in controversy exceeds the sum or value of $75,000," and to "specifically delineate the damages he has suffered and [to] discuss the legal theories under which he is permitted to recover those damages." (*See* Joint Appendix at 49 (emphasis in original)). In responding to that second show cause order, Mitan for the first time asserted that IFIC's failure to provide written verification of its continuing surety obligation had resulted in the "unlawful seizure" of three automobiles, as well as the loss of a "unique" real estate sale opportunity. No affidavits or other documentation substantiating such alleged damages were provided.

The district court then issued a third show cause order, requiring Mitan to appear in person for a hearing, "to specifically address the issue of [the requisite jurisdictional amount]." (*See* Joint Appendix at 61). Although the record does not contain a transcript of that hearing, the district court summarized the presentation as follows:

At the March 27, 2000 hearing, Kenneth Mitan's counsel, his brother, Keith Mitan, was specifically asked about the amount in controversy. He responded that Kenneth Mitan had given $22,000 in cash to IFIC for a bond, which IFIC still has. Further, Kenneth Mitan's counsel represented that three vehicles were seized as a result of IFIC's failure to acknowledge the bond in writing, causing approximately $20,000 in damages. Finally, counsel stated that Kenneth Mitan was unable to sell a piece of commercial property for $830,000. Counsel claimed that the [sic] because the Ingham County Circuit Court entered an injunction preventing the property from being sold until the judgment in [that court] was paid, Kenneth Mitan could not accept an offer to sell the property. Counsel represented to the Court that the property could now only be sold for approximately $750,000, thereby representing a loss of $80,000.

(Joint Appendix at 73–74).

Reviewing the evidence and the arguments presented, the district court rejected Mitan's claim of damages exceeding $75,000. The court expressed doubt regarding the reliability of damage assertions which surfaced only in the face of dismissal. In addition, the court viewed Mitan's "history of forum shopping and abusing the legal process" as making him less than credible. (Joint Appendix at 75). The court's order included the following detailed account of the "drawn out and complex" facts and procedural background underlying the matter before it:

The instant action arises out of an August 1993 purchase agreement entered into by Mitan Properties Company VI (hereinafter Mitan VI) and Frandorson Properties (hereinafter Frandorson), whereby Mitan VI agreed to purchase from Frandorson three Lansing area shopping centers for $21,976,832.10.

However, Mitan VI could not obtain financing, and eventually, Frandorson agreed to convey its interest in the shopping centers to another party.

On July 15, 1994, five days before Frandorson was to sell the shopping centers to another party, Mitan VI filed a complaint in the Ingham County Circuit Court alleging an interest in the properties pursuant to the August 1993 purchase agreement. At the same time, Mitan VI recorded a notice of *lis pendens* on the shopping centers in both Ingham and Clinton County. An expedited hearing was conducted in the Ingham County Circuit Court, at which the court ordered Mitan VI to post a security bond and surety in the amount of $33,400,000. Furthermore, the Ingham County Circuit Court stated that if the bond was not posted by the date and time required, Mitan VI's complaint would be dismissed and it would subsequently be enjoined from filing any further related action for a period of forty-five days. Mitan VI did not post the bond, therefore on July 21, 1994, Mitan VI's complaint was dismissed and all notices of *lis pendens* recorded by Mitan VI with respect to Frandorson's shopping centers were canceled.

After the Ingham County Circuit Court's ruling, Mitan VI filed an appeal of the order requiring it to post a security bond, as well as a second set of notices of *lis pendens* against Frandorson's shopping centers in both Ingham and Clinton Counties. On the following day, July 22, 1994, Frandorson filed a motion for bond, injunctive relief and contempt in the trial court against Mitan VI, and again obtained an expedited hearing. The Ingham County Circuit Court issued a second order canceling the second set of notices of *lis pendens* and enjoined Mitan VI from recording, "anywhere in the world," any further notices of *lis pendens* pertaining to the subject properties. The order also enjoined Mitan VI and its agents from "initiating any new actions pertaining to the subject matter of the case in any court of general jurisdiction for forty-five days." The order further provided that a contempt hearing would be held to address the matter of sanctions and penalties for filing the second set of notices of *lis pendens*.

Two days later, on July 24, 1994, Mitan VI assigned its alleged interest in the shopping centers to Mitan V. On the following day, Mitan V filed various documents in both the Ingham and Clinton County Circuit Courts which, although not entitled notices of *lis pendens*, had the same effect of clouding the shopping centers' titles.

Frandorson responded to this latest action by filing a motion for bond, injunctive relief, contempt, and cancellation of the third set of title-clouding documents in the Ingham County Circuit Court. Now two cases arising out of the same transaction, with the same facts, were pending in front of the Ingham County Circuit Court, the first case, against Mitan VI as defendant, and the second case, against Mitan V as defendant. In the second case, Frandorson requested compensatory and exemplary damages, costs and attorney fees, an order canceling the latest set of title clouding documents and an order adjudging that the Mitan defendants had no right, title or interest in Frandorson's shopping centers.

Just two hours before a hearing in the first case, Mitan VI had it removed to the U.S. District Court for the Western District of Michigan. The parties appeared for the hearing in Ingham County Circuit Court, but the court ruled that it no longer had jurisdiction in light of the removal to federal court. However, the Ingham County Circuit Court agreed to entertain a motion for bond or

other relief in the second case against Mitan V. Shortly before the hearing on the motion, defendants also caused it to be removed to the U.S. District Court for the Western District of Michigan, thus preventing the Ingham County Circuit Court from issuing an order. However, on August 4, 1994, the U.S. District Court for the Western District of Michigan, on Frandorson's motion, remanded both cases to state court. In doing so, the U.S. District Court for the Western District of Michigan imposed sanctions against Mitan V and Mitan VI on the basis that the removal "was instituted for the wholly improper purpose of delaying and impeding both the state court in conducting its business as well as Frandorson in conveying title of the real property."

On the day after the case was remanded from the Western District, the Ingham County Circuit Court entered an order in the second case, which required the Mitan defendants to post a $38,400,000 bond for damages and costs, including attorney fees; forbid the Mitan defendants from filing any pleadings until the bond was posted; provided that if the Mitan defendants failed to post the bond, Frandorson could move for summary disposition; canceled and dissolved all title-clouding documents previously filed; and scheduled a contempt hearing. On August 9, 1994, the Mitan defendants once again removed both cases to the United States District Court for the Western District of Michigan. That court, however, again remanded the cases to the Ingham County Circuit Court. On August 26, 1994, the Mitan defendants filed an answer to Frandorson's complaint without posting a security bond as ordered. Then on October 7, 1994, Frandorson moved to strike the Mitan defendants' answer and sought summary disposition. The motion alleged that the Mitan defendants' answer

violated the Ingham County Circuit Court's August 5, 1994, order because defendants had not posted the required security bond. The Ingham County Circuit Court granted Frandorson's motion, entering the order on November 28, 1994. Thereafter, on January 10, 1995, the parties stipulated to entry of a consent judgment, as to damages only, in the amount of $25,000. The Mitan defendants then appealed this decision to the Michigan Court of Appeals. Eventually, two counts of criminal contempt charges were levied against the Mitan defendants for filing title[-]clouding documents after being enjoined from doing so.

The action before this Court stems from the Mitan defendants' appeal. Michigan Court Rule 7.209 requires that an appeal bond be filed in order to stay the decision of a state trial court while a matter is being appealed. On February 2, 1995, International Fidelity Insurance Company (hereinafter IFIC), executed an appeal bond. Pursuant to that bond, IFIC became obligated as a surety for Kenneth Mitan, in the amount of $29,000. Kenneth Mitan asserts that IFIC continues to be obligated as surety in the amount of $29,000 pursuant to the appeal bond. He also maintains that he has made repeated requests for written verification of IFIC's obligations as surety under the appeal bond. Kenneth Mitan further claims that although verbal verification was given, IFIC has refused to provide him with any written verification. Therefore, Kenneth Mitan filed suit in this Court, requesting injunctive relief. Specifically, Kenneth Mitan requested the Court to find that IFIC continues to be obligated as surety under the appeal bond.

In November, 1999, this case was dismissed because there was a nearly identical case pending in state court between Kenneth Mitan and an insurance agent.

The case was dismissed without prejudice, pending the outcome of the state court action under the Declaratory Judgment Act[,] 28 U.S.C. § 2201(a), which gives trial courts discretion to dismiss an action when there is a nearly identical state case pending. *See Wilton v. Seven Fall Company,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)[.] After the suit was dismissed from this Court, Kenneth Mitan filed a nearly identical complaint with the Court. However, in the second complaint, he did not request injunctive relief. Instead, Kenneth Mitan claims breach of contract and conversion.

(Joint Appendix at 69–74).

Based on its findings that Mitan's jurisdictional allegations were not credible and that Mitan had abused the legal process, the district court dismissed Mitan's complaint with prejudice. In addition, the court barred Mitan, "anyone in privity" with him, and any of his "assignees, designees, transferees, donees, grantees, appointees, nominees, legatees, or devisees," from "filing any further complaints or motions" arising out of the same facts, at the risk of contempt sanctions.

Mitan now appeals from that order. He argues that the district court erred in dismissing his complaint for lack of subject matter jurisdiction. Additionally, Mitan asserts that any dismissal for lack of jurisdiction should have been without prejudice, and that the court therefore erred in dismissing his complaint with prejudice. Finally, Mitan contends that the court erred in prohibiting the filing of further complaints or motions regarding a matter as to which the court had determined that it lacked jurisdiction.

## II.

■ Federal district courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a)(1). District courts have the inherent power to dismiss *sua sponte* for want of jurisdiction. *In re Prevot,* 59 F.3d 556, 565 (6th Cir. 1995), *cert. denied,* 516 U.S. 1161, 116 S.Ct. 1048, 134 L.Ed.2d 194 (1996). A district court's legal determinations in dismissing a complaint for lack of subject matter jurisdiction are reviewed *de novo,* while any factual findings are reviewed only for clear error. *See Michigan Ass'n of Indep. Clinical Labs. v. Shalala,* 52 F.3d 1340, 1346 (6th Cir.1994). The party seeking to avoid dismissal bears the burden of proving subject matter jurisdiction. *See Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir.1990).

■ In determining whether Section 1332's "amount in controversy" requirement is met, federal courts look to the amount alleged in the complaint, unless it appears that the plaintiff in good faith cannot claim that amount. *See Horton v. Liberty Mut. Ins. Co.,* 367 U.S. 348, 353, 81 S.Ct. 1570, 1573, 6 L.Ed.2d 890 (1961); *Klepper v. First Am. Bank,* 916 F.2d 337, 340 (6th Cir.1990). Dismissal for failure to satisfy the requisite jurisdictional amount may be appropriate when the facts indicate that a plaintiff claimed certain damages merely to obtain federal court jurisdiction. *See* 14B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3702, at 98–101 (3d ed.1998). Such cases are exemplified "by those relatively infrequent instances in which flagrant abuse of federal court jurisdiction is obvious." *Id.* at 104.

■ Upon examining the record relative to the district court's jurisdictional amount determination, this court concludes that the district court's factual findings were not clearly erroneous. Only after two show cause orders unequivocally put Mitan on notice that the district court harbored

concerns about the existence of subject matter jurisdiction did Mitan expand upon the skeletal allegations of his complaint by mentioning the purported seizure of three automobiles and loss of a "unique" real property sales opportunity. Even after a third show cause order explicitly directed Mitan to appear personally at a hearing to address the jurisdictional amount issue specifically, Mitan still produced no testimony, documentation or other competent evidence to support his damage allegations. Aside from the representations of Mitan's counsel, the district court lacked any convincing proof that any seized vehicles or real estate deal ever existed. The court also had no sound basis for assuming that Mitan individually (rather than one of the Mitan property companies) had standing to pursue an action for those claimed losses, or that the damage figures counsel proposed reflected reasonable valuations. Accordingly, the district court's dismissal of Mitan's complaint for lack of subject matter jurisdiction did not constitute clear error.

### III.

█ Dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice. *See* Fed.R.Civ.P. 41(b); *Costello v. United States,* 365 U.S. 265, 285, 81 S.Ct. 534, 545, 5 L.Ed.2d 551 (1961). Nevertheless, "[i]n rare circumstances, a district court may use its inherent power to dismiss with prejudice (as a sanction for misconduct) even a case over which it lacks jurisdiction, and its decision to do so is reviewed for abuse of discretion." *Caribbean Broadcasting Sys., Ltd. v. Cable & Wireless PLC,* 148 F.3d 1080, 1091 (D.C.Cir.1998). This court long has recognized that a trial court's inherent power includes the power to dismiss cases involving flagrant abuses. *See Reid v. Prentice–Hall, Inc.,* 261 F.2d 700, 701 (6th Cir.1958).

█ In this matter, the district court's opinion and order adequately conveys that court's intent to dismiss the complaint with prejudice as a sanction for Mitan's prior misconduct. After painstakingly documenting Mitan's "history of forum shopping and abusing the legal process," the court clearly articulated its distaste for such practices. (*See* Joint Appendix at 69–74, 75). The record before us could be construed to present one of "those relatively infrequent instances in which flagrant abuse of federal court jurisdiction is obvious." *See* 14B WRIGHT, MILLER & COOPER, *supra,* § 3702, at 104. Under such circumstances, we cannot say that the district court abused its discretion in dismissing Mitan's complaint with prejudice.

### IV.

█ The federal courts' inherent power to protect the orderly administration of justice and to maintain the authority and dignity of the court extends to a full range of litigation abuses. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43–44, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991); *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (quoting *Cooke v. United States,* 267 U.S. 517, 539, 45 S.Ct. 390, 395–96, 69 L.Ed. 767 (1925)). A district court may award sanctions pursuant to its inherent powers when bad faith occurs. *Shimman v. International Union of Operating Engineers, Local 18,* 744 F.2d 1226, 1229–30 (6th Cir.1984), *cert. denied,* 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). The power to punish for contempt also is an inherent power of the federal courts, including the power to punish violations of their own orders. *Green v. United States,* 356 U.S. 165, 170, 78 S.Ct. 632, 635, 2 L.Ed.2d 672 (1958). A court may use this inherent power to sanction a party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Strag v. Board of Trustees, Craven Community*

*College,* 55 F.3d 943, 955 (4th Cir.1995). An abuse of discretion standard of review applies to sanctions decisions under that power. *Orlett v. Cincinnati Microwave, Inc.,* 954 F.2d 414, 417 (6th Cir.1992).

The district court's order invoked its inherent authority to sanction Mitan for his repeated abuse of the judicial process when it prohibited him from introducing further related actions. Because there was a basis for the district court to invoke its inherent power to sanction Mitan, the district court did not abuse its discretion. *See National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 2780–81, 49 L.Ed.2d 747 (1976).

## V.

For the foregoing reasons, we AFFIRM the judgment of the district court.