**In re MPX TECHNOLOGY, INC., Debtor.**

No. 8:03–BK–18060.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 5, 2004.

Buddy D. Ford, Tampa, FL, for Debtor.

T. Patrick Tinker, Office of the U.S. Trustee, Tampa, FL, for U.S. Trustee.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

The resolution of disputes involving corporate governance is generally not within the competence and jurisdiction of a Bankruptcy Court even if the corporation is a debtor under Chapter 11 of the Bankruptcy Code. *In re Bush Terminal Co.*, 78 F.2d 662 (2d Cir.1935); *Saxon Industries, Inc., v. NKFW Partners*, 488 A.2d 1298 (Sup.Ct.Del.1985); *In re The Lionel Corp.*, 30 B.R. 327 (Bankr.S.D.N.Y.1983). The dispute under consideration in this contested matter is precisely this, although the current dispute is not about the control of a corporation, but involves the authority of George Bianchi to file a Petition for Relief under Chapter 11 for mpX Technology, Inc., the debtor in this case (mpX Technology).

The following facts are without dispute and are part of the record. On August 29, 2003, George Bianchi (Bianchi) filed a Voluntary Petition for Relief (Petition) under Chapter 11 on behalf of mpX Technology. Bianchi signed the Petition as President of mpX Technology. In addition, Bianchi also attached to the Petition a "Statement Regarding Authority to Sign and File Petition." In this Statement, Bianchi quoted from a resolution by the Board of Directors made at a special meeting called and held on August 15, 2003, that authorized him to file the Petition as president of the corporation.

The Statement of Financial Affairs filed with the Petition, also executed by Bianchi,

listed the president of mpX Technology as Bianchi. (Statement of Financial Affairs Q. 21.b). It listed the directors of the corporation as Bianchi, Mizio Armando, and George Whitney. It stated that Bianchi owned 40 percent of the common stock of mpX Technology.

On September 10, 2003, Martin Sportschuetz (Sportschuetz) filed his Verified Motion to Dismiss the Chapter 11 case (Doc. No. 12), for cause, alleging that Bianchi was not the President of mpX Technology and had no authority to file this instant bankruptcy case. Due to the claimed emergency, this Court held a preliminary hearing on the Motion to Dismiss. It was alleged that mpX Technology was not insolvent and had no need for relief under the Bankruptcy Code.

On September 16, 2003, at the preliminary hearing to consider the Motion to Dismiss, counsel for mpX Technology opposed the Motion and also filed several documents in opposition to the Motion. (Doc. Nos. 25 through 32). These documents included several sworn statements, including one by Bianchi, as well as deposition transcripts. Because the Motion to Dismiss was opposed, this Court scheduled the dispute for final evidentiary hearing to be held on October 8, 2003.

The day before the final evidentiary hearing, mpX Technology filed a Notice of Voluntary Dismissal of the case (Doc. No. 34). The Court granted Sportschuetz's Motion to Dismiss without opposition and without findings in its Order of Dismissal dated October 14, 2003 (Doc. No. 38).

Prior to the entry of the Dismissal Order but after the filing of the Voluntary Notice of Dismissal, Sportschuetz filed a Motion for Sanctions Pursuant to Rule 9011 (Doc. No. 35). The Dismissal Order specifically reserved jurisdiction to determine the Motion for Sanctions and to enforce any order if sanctions are awarded.

The Motion for Sanctions was set for final evidentiary hearing and, based upon the testimony and the evidence received at the trial, this Court makes the following findings of fact and conclusions of law in accordance with the provisions of F.R.B.P. 9014 and F.R.B.P. 7052.

### Chronological Sequence of Events

The Debtor, mpX Technology, is a Delaware corporation incorporated in September 2000. The business of the company was compression technology of videos and audios for the Internet. The corporation's original name was eCorp.com, Inc., and the corporation changed its name to mpX Technology before the events relevant to the issue at dispute.

Sportschuetz and Bianchi were among the founders of the corporation. Whatever their titles and corporate capacities, Sportschuetz incorporated and ran the company, maintained the books and records, and handled the financial affairs of mpX Technology. Bianchi introduced Sportschuetz to Frank Miles, D.O., who developed the technology that became the only real asset of mpX Technology, in addition to various ideas and visions of Bianchi.

From the beginning of the corporation, the issuance, transfers, retirements, and redemptions of every share of the corporations stock has been reflected in the minutes of meetings or resolutions of the board of directors or shareholders. These minutes and resolutions were received in evidence. (Movant Exhibits 12, 13, 14, and 15).

It is without dispute that as of April 7, 2003, the board of directors of mpX Technology, was comprised of George Whitney, James Rosenthal, and Bianchi. (Tr. at 28). It is further undisputed that as of April 7, 2003, the president was Bianchi and the chief executive officer was Sportschuetz. On April 7, 2003, Bianchi sent a letter to

Sportschuetz terminating Sportschuetz' employment with the company as its chief executive officer. (Movant Ex. 16). Rosenthal and Bianchi discussed Bianchi's termination of Sportschuetz beforehand and Rosenthal agreed with Bianchi's decision. Bianchi did not discuss the matter beforehand with Whitney or with Mizio. No meeting of the board of directors was convened concerning the matter. (Tr. at 54). Sportschuetz received the letter of termination on April 9, 2003. (Tr. at 30). He then discussed the matter with Whitney and Mizio, who according to Sportschuetz were the majority shareholders of the corporation.

On April 9, 2003, as the majority shareholders of the corporation, Whitney and Mizio decided to change the composition of the board of directors. (Tr. at 30–31). They removed Bianchi and Rosenthal as directors and appointed in their place Mizio and Sportschuetz. They signed a Consent in Lieu of a Meeting of Shareholders memorializing this action. (Movant Ex. 17). Thus, following the action, the board of directors consisted of Whitney, Mizio, and Sportschuetz.

In lieu of presenting the stock ledger of the corporation at trial, Sportschuetz prepared two schedules reflecting each transfer of stock from the beginning of the corporation through April 9, 2003, based upon the minutes and resolutions. These schedules were received in evidence as Movant Exhibits 10 and 11. These schedules specifically refer to the precise minutes or resolution that authorized the transfer of the shares indicated.

As of April 9, 2003, there were 4,200,000 issued and outstanding shares of the common stock of mpX Technology. (Movant Ex. 10; Tr. at 27). Those shares were owned as follows:

| | |
|---|---:|
| a. Dominick Bianchi | 1,818,750 |
| b. Armando Mizio | 137,500 |
| c. TM Williams LLC | 15,000 |
| d. Richard Avis | 225,000 |
| f. George Whitney | 2,003,750 |
| Total Common | 4,200,000 |

As of April 9, 2003, Whitney Mizio owned 2,141,250 shares of the common stock (2,003,750 + 137,500 = 2,141,250). This represented 50.98214 percent, a majority of the total common shares outstanding. (Tr. at 27).

As of April 9, 2003, there were 600,000 issued and outstanding shares of the preferred stock of mpX Technology. (Movant Ex. 11; Tr. at 28). Those shares were owned as follows:

| | |
|---|---:|
| a. George Whitney | 305,000 |
| b. T.C. Williams LLC | 25,000 |
| c. Thomas Brush | 2,500 |
| d. Richard Rios | 5,000 |
| e. Donald Corderman | 5,000 |
| f. Sammie Marra | 5,000 |
| g. Alexander Timmis | 5,000 |
| h. Abstract Electronics | 100,000 |
| i. Gregory Potter | 50,000 |
| j. Bruno Colandrea | 25,000 |
| k. Christopher Colandrea | 25,000 |
| l. Annette KurtZ | 25,000 |
| m. R. & L. Taucher | 5,000 |
| n. L. & C. Richards | 10,000 |
| o. B. & R. Frank | 7,500 |
| Total Preferred | 600,000 |

As of April 9, 2003, George Whitney owned 305,000 shares of the preferred stock. This represented 50.83333 percent, a majority of the total preferred shares outstanding. (Tr. at 28).

If one adds the common shares and the preferred shares together there were 4,800,000 combined shares outstanding (4,200,000 common + 600,000 preferred = 4,800,000 combined). Whitney and Mizio owned 2,446,250 of the combined shares (2,003,750 Whitney common + 137,500 Mizio common + 305,000 Whitney preferred = 2,446,250 combined). These represent 50.96354 percent, a majority of the total combined shares outstanding.

### Who held the majority of shares of mpX Technology on April 9, 2003?

Whitney was the first investor in the company. The board resolution of November 15, 2001 stated that Whitney would receive 135,000 shares of common stock, and no more, for his initial $50,000 investment. The other shares that Whitney received, whether common or preferred, he received from transfers of shares originally issued to Sportschuetz or from other issues, each one of which was authorized by the board of directors or the stockholders or both. (Movant Ex. 10 and 11). For instance, the board of directors meeting, May 3, 2002 minutes, resolution #17 states that Sportschuetz has assigned all of his shares in the company to Whitney. (Movant Ex. 13). In other words, the 135,000 cap on common shares reflected refers only to shares issued in return for Whitney's initial $50,000 investment.

Following Bianchi's attempt to terminate Sportschuetz, the members of the new board of directors conferred to terminate Bianchi as president of the corporation and to appoint Sportschuetz in his place. The new board nullified Bianchi's action of April 7, 2003 to terminate Sportschuetz, and appointed Sportschuetz as treasurer and chairman of the board.

On Monday, April 14, 2003, Sportschuetz sent notice of the changes in governance that occurred on April 9, 2003 to the shareholders of mpX Technology. (Movant Ex. 21; Tr. at 36). Neither Bianchi nor Rosenthal were shareholders of the corporation. (Movant Exs. 10 and 11). It is undisputed that Bianchi had assigned his shares to Dominick Bianchi. (Movant Ex. 13; resolution #16). Notwithstanding, Sportschuetz did notify Bianchi of the action by e-mail and sent a copy to Rosenthal. (Movant Ex. 19; Tr. at 37–38).

It is without dispute that Bianchi in fact received notice of the action. Not only did Bianchi reply to Sportschuetz' e-mail, but he also sent a letter dated April 14, 2003, to all shareholders and others acknowledging the action of April 9, 2003. (Movant Ex. 20). On April 16, 2003, Sportschuetz sent another letter to all shareholders, responding to Bianchi's April 14th letter. (Movant Ex. 22; Tr. at 40–42).

### The Bankruptcy Filing

In early September 2003, Sportschuetz, Whitney, and Mizio learned of the August 29, 2003, bankruptcy filing on behalf of mpX Technology when Whitney and Mizio received a letter dated September 4, 2003, from the Office of the U.S. Trustee. (Movant Ex. 23; Tr. at 42). This was the first notice any of them had received about the bankruptcy filing. This board of directors, composed of Sportschuetz, Whitney, and Mizio, had not authorized the bankruptcy filing or the employment of Buddy D. Ford, P.A., as counsel for the corporation. (Tr. at 42–43). No special meeting of this board of directors had been conducted authorizing this action. (Tr. at 44).

Bianchi testified that the board of directors was composed of Bianchi, Whitney, and Rosenthal when he filed the Petition. He acknowledged that no meeting of "this" board of directors occurred or was noticed on August 15, 2003, or otherwise authorized the bankruptcy filing. Instead, both Bianchi and Rosenthal testified that they had a conversation and agreed that Bianchi should file the bankruptcy case. Bianchi testified that it was this conversation that constituted his authority to file the bankruptcy case.

Upon learning of the bankruptcy filing, the members of the board of directors authorized Sportschuetz to engage counsel to seek dismissal of the bankruptcy case. (Tr. at 45–46). Sportschuetz retained

counsel and paid $15,300 for his services through February 26, 2004. Sportshuetz's counsel's billings through that date appear in the record as Movant Exhibits 27, 28, 29, and 30. These billings do not reflect additional time spent at the continuation of the final evidentiary hearing on February 27, 2004, or in the preparation of post-trial submissions as requested by the Court.

■■■ The motion for sanctions under consideration is based on Federal Rule of Bankruptcy Procedure 9011(b), which pertinent part provides as follows:

By representing to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; ...

(3) the allegations and other factual contentions have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on a lack of information or belief.

The purpose of F.R.B.P. 9011 is to deter litigation abuse and unnecessary filings. Sanctions are warranted when (1) the papers are frivolous, legally unreasonable or without factual foundation, or (2) the pleading is filed in bad faith or for an improper purpose. *In re Mroz*, 65 F.3d 1567, 1572 (11th Cir.1995). An objective standard is applied by the court when making a determination regarding whether a party's conduct was reasonable under the circumstances. *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir.1987). The inquiry should be limited to the facts and law *known at the time the pleading was filed.* *In re Mroz*, 65 F.3d at 1572 (emphasis supplied).

■■■ Applying the foregoing to the facts at hand, this Court must determine whether or not Bianchi, at the time that he filed the Petition for mpX Technology, had a reasonable basis to believe that he had the authority to file the Petition as president of mpX Technology. The record is clear that the dispute regarding who was "in charge" of the corporation began ostensibly on April 7, 2003, with the Notice of Termination (Movant Ex. 16) of Sportschuetz and was "resolved" by April 16, 2003, with the letter to the shareholders (Movant Ex. 22) indicating the Sportschuetz was president of mpX Technology. Thereafter, the evidentiary record reveals that the dispute went "cold" until the filing of the Petition on August 29, 2003 (Doc. No. 1), which precipitated another round of corporate governance disputes.

There is no evidence in the record to support Bianchi's assertion that he was unequivocally president of mpX Technology on August 29, 2003. This Court's inquiry is an objective standard, i.e., would a reasonable person have thought that he/she had the authority to initiate this bankruptcy case on August 29, 2003. *See Donaldson, supra.* This Court is satisfied that a reasonable person could not have perceived that he/she would have the authority to file this bankruptcy case. The evidence is clear that there was a bona fide dispute regarding who the president was of mpX Technology that began in April of 2003 and continues until the present. Regardless of whether or not Bianchi received "formal" notice of his removal as president, there is no doubt and the record is clear that Bianchi knew of the action of the shareholders in removing him as presi-

dent and replacing Sportschuetz as president. This is evident by the e-mails that transpired between the two gentlemen beginning on April 10, 2003 and ending on April 14, 2003. (Movant Ex. 19) The last dated correspondence to the shareholders of mpX Technology, dated April 16, 2003, states that Sportschuetz is the existing president and not Bianchi. (Movant Ex. 22). Finally, the corporate records, filed with the Secretary of State for the State of Florida, on April 28, 2003, indicate that Bianchi was *removed* as president and Sportschuetz was added as a director. (Emphasis supplied). (Movant Ex. 26). *See In re AT Engineering, Inc.*, 142 B.R. 990 (Bankr.M.D.Fla.1992)(closely held corporation with 50/50 shareholder, no authority to file petition due to total deadlock; sanctions warranted); *In re Zaragosa Properties, Inc.*, 156 B.R. 310 (Bankr.M.D.Fla.1993)(burden of persuasion on party who signed petition to establish that under applicable law, he had the capacity to sign the petition). In light of the evidence adduced at trial, this Court is satisfied that a reasonable person in these circumstances could not have thought that he/she had the authority to initiate the above-captioned bankruptcy case as president of this corporation.

Having found that Bianchi has violated F.R.B.P. 9011, sanctions are appropriate. F.R.B.P. 9011(c). However, the kind of sanction to be imposed is left to the discretion of the court. *Donaldson, supra.* The purpose of the sanction is to deter abusive practices and to compensate the offended party. *In re AT Engineering, Inc.*, 142 B.R. 990, 992 (Bankr. M.D.Fla.1992). The proper measure is not necessarily the actual fees or expenses incurred; rather, an amount that is reasonable. *In re Thompson*, 165 B.R. 30, 33 (Bankr.M.D.Tenn.1994). The court must consider the deterrent effect of the sanc-

tion and the party's ability to pay. *Orlett v. Cincinnati Microwave, Inc.*, 954 F.2d 414, 420 (6th Cir.1992).

The statement of Bianchi on the Petition that he was the president of mpX Technology on the date that he filed the Petition was hotly disputed. While this Court is satisfied that the evidence tends to support the conclusion that he was not the president of mpX Technology and did not have the authority to file the Petition, this Court must now determine what sanction is appropriate. It is clear from this record that the filing was not for a proper purpose that is to obtain the benefit of Chapter 11. There is no proof that mpX Technology was in need for Chapter 11 relief, on the contrary, the most telling proof is that Bianchi filed a notice of voluntary dismissal.

Filing a Chapter 11 petition for the purpose of resolving an inter-company dispute is not one of the goals which is to be achieved in a Chapter 11 case and it is totally improper to use the bankruptcy court and the provisions of the Code for this purpose. Considering the unlikelihood of any further attempts by Bianchi to repeat his attempts to abuse this Court, thus the deterrent aspect is insignificant and considering the fact that the position taken by Bianchi was somewhat debatable and not facially totally baseless, this Court is satisfied that the appropriate amount of sanctions shall not be more than $10,000.

A separate Final Judgment shall be entered in accordance to the foregoing.