*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8013-1(b). See also 6th Cir. BAP LBR 8010-1(c).*

**File Name: 11b0006n.06**

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re: LAMAR CROSSING APARTMENTS, L.P., | ) |
| | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| PRESTON E. BYRD, | ) |
| | )     No. 10-8071 |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| ARVEST BANK, | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Western District of Tennessee.
Bankruptcy Case No. 09-30194.

Decided and Filed: September 20, 2011

Before: HARRIS, McIVOR, and RHODES, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** Paul A. Matthews, BOURLAND HEFLIN ALVAREZ MINOR & MATTHEWS, PLC, Memphis, Tennessee, for Appellee. Preston Byrd, Collierville, Tennessee, pro se.

---

**OPINION**

---

MARCI B. McIVOR, Bankruptcy Appellate Panel Judge. Preston E. Byrd ("Byrd"), pro se, appeals an order of the bankruptcy court granting a motion for sanctions against him pursuant to Federal Rule of Bankruptcy Procedure 9011. The order required Byrd to pay Arvest Bank's attorney fees and expenses in the amount of $42,299.08. For the reasons that follow, we affirm the order of the bankruptcy court.

**ISSUE ON APPEAL**

The issue presented by this appeal is whether the bankruptcy court abused its discretion in ordering that Byrd pay Arvest Bank's attorney fees and expenses as a sanction for filing a chapter 11 bankruptcy petition without authority and in bad faith in violation of Federal Rule of Bankruptcy Procedure 9011.

**JURISDICTION AND STANDARD OF REVIEW**

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for the Western District of Tennessee has authorized appeals to the Panel, and neither party has timely elected to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations omitted). The bankruptcy court's order imposing sanctions is a final, appealable order. *See B-Line, LLC v. Wingerter* (*In re Wingerter*), 594 F.3d 931, 936 (6th Cir. 2010).

The bankruptcy court's conclusions of law are reviewed de novo. *Riverview Trenton R.R. Co. v. DSC, Ltd.* (*In re DSC, Ltd.*), 486 F.3d 940 (6th Cir. 2007). "Under a *de novo* standard of

review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007). The court's findings of fact are reviewed under the clearly erroneous standard. *In re DSC, Ltd.*, 486 F.3d at 944. "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985)).

A bankruptcy court's imposition of sanctions is reviewed for an abuse of discretion. *Id.* An abuse of discretion is established when the reviewing court is left with a "definite and firm conviction that the trial court committed a clear error of judgment." *Mich. Div.-Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 524 F.3d 726, 739 (6th Cir. 2008) (citations omitted). "An abuse of discretion occurs only when the [trial] court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Kaye v. Agripool, Inc.* (*In re Murray, Inc.*), 392 B.R. 288, 296 (B.A.P. 6th Cir. 2008) (citations omitted). "'The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion.'" *In re Wingerter*, 594 F.3d at 936 (quoting *Barlow v. M.J. Waterman & Assocs., Inc.* (*In re M.J. Waterman & Assocs., Inc.*), 227 F.3d 604, 608 (6th Cir. 2000)).

## FACTS

On June 14, 2007, Horizon Holding Company, LLC ("Horizon") and Boston Capital Corporate Tax Credit Fund XXVI ("Boston Capital") entered into a First Amended and Restated Agreement of Limited Partnership ("Partnership Agreement") for the purpose of constructing a housing project in Germantown, Tennessee. Lamar Crossing Apartments, LP ("Debtor"), a Tennessee limited partnership, was the owner of this housing project under development. Originally, the general partner of the Debtor was Horizon. Preston E. Byrd ("Byrd") is the Chief Manager of

3

Horizon. The special limited partner of the Debtor is BCCC, Inc. ("BCCC, Inc."). The investment limited partner is Boston Capital.[1]

Pursuant to the terms of the Partnership Agreement, the special limited partner has the right to:

remove the General Partner and elect a new General Partner (A) on the basis of the performance and discharge of such General Partner's obligations constituting fraud, bad faith, gross negligence, willful misconduct or breach of fiduciary duty, or (B) upon the occurrence of a Material Event.

(Section 4.5(a)(iii), Partnership Agreement). On May 8, 2008, under the terms of the Partnership Agreement, Boston Capital, the investment limited partner, gave notice to Horizon of a material default.[2] On November 10, 2008, after Horizon failed to cure the default, the special limited partner exercised its rights to remove Horizon as the general partner of the Debtor. On November 10, 2008, BCP-Michigan, LLC ("BCP") was appointed as general partner, and the special limited partner gave notice to Byrd of Horizon's removal as general partner. On November 12, 2008, BCCC, Inc. filed an Amendment to the Certificate of Limited Partnership with the Tennessee Secretary of State indicating that "Horizon Holding Company, LLC. has withdrawn as General Partner and replaced by BCP-Michigan, LLC as General Partner."

The construction of the housing project was the subject of a number of lawsuits filed in state court. On December 18, 2008, in a lawsuit in Chancery Court styled *James Hutton and Orson Sykes, individually and derivatively on behalf of Horizon Holding Co., LLC v. Preston Byrd, et. seq.*, a consent order was entered appointing Lucian T. Pera ("Pera") as Horizon's receiver. Pera was charged to "take all actions necessary to preserve and safeguard the PILOT status [of the housing

---

[1] The special limited partner and investment limited partner are affiliates of Boston Capital, which is in the business of syndicating tax credits and providing financing and investment for low and moderate income housing projects nationwide.

[2] The notice of default indicates that Horizon, as general partner, was in default because it had "failed to pay various vendors and contractors . . . notwithstanding receipt of funds" of approximately $1 million dollars.

project] and tax credits available to the real estate development known as the Lamar Crossings Project." Pera was also empowered to determine whether "the withdrawal of Horizon Holding Company, LLC's opposition to its removal as the General Partner on the Project is necessary to preserve and safeguard the PILOT status and the tax credits." As receiver, Pera was given authority to bind Horizon. After conferring with all interested parties, including Byrd and all parties' counsel, Pera determined that Horizon's removal was necessary.

On September 15, 2009, in another related proceeding in state court styled, *Lamar Crossing Apartments, LP, and Horizon Holding Co., LLC v. Arvest Bank*, an order was entered dissolving a previously entered temporary restraining order and authorizing Arvest Bank to "proceed with the foreclosure scheduled for September 16, 2009 at noon at the southwest corner of Shelby County Courthouse (Adams Avenue entrance), Memphis, Tennessee." Arvest Bank is the holder of bonds secured by the first priority Deed of Trust on real estate owned by the Debtor. Bank of Oklahoma, N.A., is the Trustee under the applicable Trust Indenture to act on behalf of the holder of the bonds, Arvest Bank. The Debtor had defaulted under the Deed of Trust on the real estate, and under other loan documents. Horizon filed the Lamar Crossing litigation in an attempt to prevent Arvest Bank from foreclosing on the property.

On September 16, 2009 at 9:37 a.m., Byrd caused a petition for relief under chapter 11 of the Bankruptcy Code to be filed for the Debtor. The petition was signed by Samuel Jones ("Jones") as attorney for the Debtor, and by Byrd as "Chief Manager." Arvest Bank and Bank of Oklahoma were unaware of the filing. Therefore, the foreclosure sale went forward as scheduled at noon that same day with Bank of Oklahoma, in its capacity as Trustee for Arvest Bank, as the successful bidder.

On September 17, 2009, Arvest Bank and BCP, the general partner of the Debtor, filed a joint Expedited Motion to Dismiss Case, to Vacate Order for Relief, and/or to Determine that Automatic Stay Does Not Apply to Foreclosure Sale. The motion asserted that neither Jones nor Byrd was authorized to file or sign the petition for relief, and even if the filing were authorized, the petition was not filed in good faith.

5

On September 18, 2009, Arvest Bank and BCP filed a joint Motion for Sanctions Against Samuel Jones and Preston Byrd for Filing Bankruptcy Petition in Bad Faith and in Violation of Fed. R. Bankr. P. 9011. Initially, the motion to dismiss and motion for sanctions were set jointly for hearing on October 29, 2009. However, the bankruptcy court continued the hearing on the motion for sanctions until December 16, 2009.

On October 28, 2009, an evidentiary hearing was held on the motion to dismiss only. Following the hearing on the motion to dismiss the case, Jones filed an amended petition, schedules and statement of financial affairs. The amended petition indicated that Byrd signed the petition as "Chief Manager of Horizon Holding Company, LLC, G.P. of Debtor." Schedule B was amended to indicate that "Boston Capital Tax Credit Fund XXVI owes the Debtor as an equity contribution to the Debtor - $3,000,000." Schedule F was amended to list additional unsecured creditors, including contractors on the project. The Statement of Financial Affairs was amended to list six lawsuits involving the Debtor which were pending at the time the petition was filed.

On November 12, 2009, the bankruptcy court entered an order dismissing the chapter 11 case and annulling the automatic stay. In that order, the bankruptcy court held that the case should be dismissed because it was filed without authority. The bankruptcy court found: (1) that the special limited partner had taken all steps necessary to remove Horizon and substitute BCP as general partner of the Debtor, and (2) that because BCP was the general partner at the time the petition for relief was filed, Byrd was not authorized by the Partnership Agreement to hire counsel for, or sign the petition on behalf of, the Debtor. Further, the court found that the Partnership Agreement prohibits the general partner from filing a bankruptcy petition on behalf of the Debtor without the consent of the special limited partner, and no such consent was given by the special limited partner.

The bankruptcy court also concluded that "cause" existed under 11 U.S.C. § 1112(b)(1) for dismissing the chapter 11 bankruptcy case because the petition was not filed in good faith. The bankruptcy court noted that the Debtor's bankruptcy petition was filed on the day of foreclosure, without proper authorization as required under the Partnership Agreement, and immediately after

6

the stay of foreclosure had been dissolved by the Chancery Court. The court also found that the petition was not filed in good faith based on false statements and omissions contained in the filing, including: that Byrd is Debtor's Chief Manager; that Horizon is the Debtor's general partner; and that there were no lawsuits or administrative proceedings to which the Debtor was a party pending in the year proceeding the filing. Under the facts and circumstances of the case, the court held that the petition was filed in bad faith and should be dismissed. Byrd did not appeal the November 12, 2009, bankruptcy court order dismissing the Debtor's bankruptcy case.

On March 3, 2010, the court held an evidentiary hearing on Arvest Bank's motion for sanctions. At the evidentiary hearing, both Jones and Byrd appeared pro se and testified. Jones testified that at 9:00 a.m. on September 16, 2009, while he was with a client in his office preparing for a 10:00 a.m. hearing, Byrd and Byrd's father came to his office without an appointment requesting that he file a chapter 11 petition for relief on Debtor's behalf. Byrd represented to Jones that he had authority to file a petition on Debtor's behalf because he was a manager of Horizon and Horizon was a partner of the Debtor. In an effort to confirm that representation, Jones did an online search of the Tennessee Secretary of State records which revealed that Horizon was the registered agent for service of process for the Debtor, and that Byrd was the registered agent for service of process for Horizon. The Partnership Agreement was not made available to Jones at that time. At that time, Byrd and Jones discussed the recent state court hearing which resulted in the order permitting the foreclosure sale to proceed, but apparently did not discuss any other ongoing litigation regarding the Debtor or Horizon.

Jones agreed to file a chapter 11 petition for the Debtor at that time, and prepared a one page "Client Information Sheet and Agreement" under the name "Lamar Crossing Apartments, LP/Preston Byrd." The agreement indicates that Jones will file a chapter 11 petition and be paid $150 per hour for all work related thereto. An upfront fee of $10,000 was required in order to take the case. The agreement further indicates that $500 was paid on the date the agreement was executed, with an additional $2,000 to be paid on September 18, 2009, and $7,500 on September 30, 2009. The agreement is signed by Byrd. Byrd's father paid the $500 in cash. At the hearing, Jones identified

a check in the amount of $3,039 dated September 18, 2009, drawn on Horizon's account which he later received, and which was negotiated on September 23, 2009.

Jones further testified that with Byrd at his side he typed information into his computer to prepare the chapter 11 petition and file it electronically. The petition was electronically signed by Jones as attorney for the Debtor, and Byrd as "Chief Manager," and filed at 9:37 a.m. on September 16, 2009.

At the hearing on March 3, 2010, Byrd testified that he received a copy of the report filed by Pera, the state court receiver for Horizon, withdrawing Horizon's motion to stay its removal as general partner of the Debtor. Byrd further testified that he was present at the state court hearing at which the court ruled that the foreclosure on the Debtor's property could go forward, and that he understood the ruling.

In response to the court's questions, Byrd explained that before approaching Jones about filing the chapter 11 petition, he discussed the possibility with Michael McCullar ("McCullar"), the attorney representing Horizon in state court. According to Byrd, McCullar told him that bankruptcy may be the "only alternative." However, because McCullar does not practice bankruptcy law, he recommended two other attorneys with whom Byrd could speak. The first attorney Byrd approached advised that he had insufficient time to evaluate the case. The second attorney Byrd approached was Jones. Byrd testified that he discussed filing a bankruptcy petition with no one else.

According to Byrd, he went to Jones' office on the morning of September 16, 2009, without an appointment to "discuss bankruptcy to see if we could file it to protect the assets and the property." (Bankr. Ct. Docket # 83, p. 88, Transcript of Hearing held March 3, 2010). He explained that he "told [Jones] that this project had been surrounding several litigations that was going on. We just had a hearing a couple of days ago in Chancery Court and the judge lifted the stay to allow the plaintiffs to foreclose and that we needed to protect the asset." *Id*. at 97. In response to questions regarding the client agreement, between him and Jones, Byrd acknowledged his signature, in an

8

individual capacity, and that Horizon appears nowhere on the document. Byrd further explained that he went to Jones' office unprepared to pay any fees. As a result, Byrd's father, who he testified is not employed by Horizon, volunteered to pay and did pay the $500 fee in cash.

During the March 3, 2010, hearing, the bankruptcy court pointedly asked Byrd: "Did you think it was reasonable to show up at an attorney's office and have a Chapter 11 petition filed thirty minutes later?" Byrd responded:

> Having never gone through a bankruptcy process before, I mean, that would be the purpose for me to go to an attorney to figure out. I didn't try to do it myself. I went to an attorney to advise the company on how to proceed with this process or even if we could proceed.

(Bankr. Ct. Docket # 83, at 102-03, Transcript of Hearing held March 3, 2010). The court then inquired whether Byrd had ever personally filed bankruptcy or whether any other entity with which he has been involved has done so. Byrd responded in the negative. Later in the proceeding he "corrected" his answer to state that he had twice filed personally. Byrd testified that he spent approximately 30 minutes with his attorney answering questions, but that each case was dismissed at Byrd's request.[3]

The bankruptcy court also questioned Byrd regarding his educational and employment background. Byrd testified that in 2006 he formed Horizon Holding Company, LLC for the purpose of developing multi-family housing development complexes, such as the Lamar Crossing project. Byrd testified that Horizon "currently, for all intents and purposes, is defunct because of this Lamar Crossing project." (Bankr. Ct. Docket # 83, at 101, Transcript of Hearing held March 3, 2010).

In response to the court's questions, Byrd explained that he has engaged a number of attorneys in the past in connection with his businesses. Byrd also works with a number of attorneys

---

[3] The bankruptcy court checked the court records and determined that in fact Byrd filed two chapter 13 cases in 1996 both of which were dismissed. However, they were not dismissed at Byrd's request. One was dismissed because Byrd did not attend the first meeting of creditors, and the other was dismissed because Byrd did not timely commence making payments.

9

in connection with Horizon's business. According to the bankruptcy court, Byrd named a number of "leading Memphis law firms" with which he has worked.

At the hearing on the motion for sanctions, Byrd introduced into evidence a copy of his employment agreement with Horizon, and the operating agreement of Horizon. Byrd asserted that the employment agreement was relevant because the motion for sanctions was against him individually, whereas, according to Byrd, in seeking to have the chapter 11 petition filed, Byrd was acting only in his capacity as Horizon's chief manager. Byrd further asserted that because he is employed by Horizon, and was acting in his capacity as Horizon's chief manager, he is entitled to indemnification from Horizon for any sanctions which may be levied against him. Byrd also asserted that the articles of indemnification contained in the Horizon operating agreement entitle him to indemnification. Byrd did not include the indemnification argument in his pleadings.

Arvest Bank introduced into evidence monthly statements of attorney fees and expenses for legal services rendered in connection with the bankruptcy case from the time the petition was filed through December 28, 2009, in the amount of $42,299.08. Donald Bourland, an attorney for Arvest Bank, testified that Arvest Bank had incurred, and paid, the fees and costs listed in the statements.

The bankruptcy court asked both Jones and Byrd to submit sworn written balance sheets and income statements within ten days of the hearing, in order to determine their ability to pay any sanctions which may be levied. Both Jones and Byrd submitted statements regarding their income and expenses, and Byrd also submitted a balance sheet. The information submitted showed that neither of them has significant income in excess of expenses.

On August 30, 2010, the bankruptcy court issued a memorandum opinion and order granting Arvest Bank's motion for sanctions against Byrd and Jones pursuant to Federal Rule of Bankruptcy Procedure 9011 for causing a chapter 11 petition for relief to be filed in bad faith and without authority. The court imposed sanctions against both Byrd and Jones.

Sanctions were imposed against attorney Jones for failure to make an objective inquiry pursuant to Rule 9011(b)(2). Jones was ordered to attend 24 hours of continuing legal education within 12 months of the entry of the order at issue, one-half concerning ethics and one-half related to chapter 11 bankruptcy. Jones did not appeal the order imposing sanctions against him.

Sanctions were imposed against Byrd for causing the chapter 11 petition to be filed without authority to do so, and doing so in bad faith. Byrd was ordered to pay Arvest Bank its attorney fees and expenses incurred through December 28, 2009, in the amount of $42,299.08.[4] In determining whether to impose sanctions against Byrd, the bankruptcy court analyzed whether he had a reasonable basis to believe that he had authority to cause the chapter 11 petition to be filed on Debtor's behalf. The court determined that Byrd did not, because he is a sophisticated businessman who was fully aware that, at a minimum, there was a dispute as to whether Horizon continued to serve as Debtor's general partner, and that as Horizon's chief manager and signatory to the Partnership Agreement, Byrd was charged with the knowledge that the Partnership Agreement required the consent of the limited partner to file a petition for bankruptcy. Moreover, the court noted that for the purposes of this case, the court had determined in its earlier order that Horizon was removed as general partner before the filing, and the filing was not authorized.

Byrd filed a timely appeal of the bankruptcy court's order.

**DISCUSSION**

The bankruptcy court order of dismissal entered on November 12, 2009, finding that the petition was filed without authority and in bad faith, was not appealed by Byrd and is therefore not properly before the Panel. (Bankr. Ct. Docket # 60, pp. 6, 8, Order dismissing case dated Nov. 12, 2009). The November 12, 2009, order of dismissal was a final, appealable order. *See DB Capital*

---

[4] The court refused, however, to also order as a sanction against Byrd payment of $51,390.08 in insurance premiums and security costs incurred by Arvest Bank in connection with maintenance of the Lamar Crossing's apartment complex as a result of the bankruptcy filing as prayed for by Arvest Bank because the costs were incurred well in advance of the filing.

*Holdings, LLC v. Aspen HH Ventures, LLC* (*In re DB Capital Holdings, LLC*), Nos. CO-10-046,10-23242, 2010 WL 4925811 (B.A.P. 10th Cir. 2010). Since Byrd did not file an appeal of the dismissal order, Byrd has waived his right to challenge any of the findings made by the bankruptcy court in dismissing the Debtor's chapter 11 bankruptcy case and annulling the automatic stay.

Byrd only appealed the bankruptcy court order entered on August 30, 2010. In the August 30, 2010, order the court granted Arvest Bank's motion for sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011, requiring Byrd to pay Arvest Bank's attorney fees and expenses in the amount of $42,299.08. Therefore, the only issue on appeal is whether the bankruptcy court abused its discretion in ordering Byrd to pay Arvest Bank's attorney fees and expenses as a sanction for filing a chapter 11 bankruptcy petition without authority and in bad faith, in violation of Rule 9011.

<u>Federal Rule of Bankruptcy Procedure 9011</u>

Federal Rule of Bankruptcy Procedure 9011 provides in relevant part:

(b) REPRESENTATIONS TO THE COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) SANCTIONS. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated.

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). . . . If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

. . . .

(2) Nature of Sanction; Limitations. A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed. R. Bankr. P. 9011.

The test for imposing Rule 9011 sanctions is whether the individual's conduct at issue was "reasonable under the circumstances" at the time the filing was submitted. *B-Line, LLC v. Wingerter* (*In re Wingerter*), 594 F.3d 931, 941 (6th Cir. 2010). "Rule 9011 . . . is designed to encourage counsel (and parties) to avoid groundless filings or pleadings filed for improper purposes, largely through the imposition of sanctions." *In re Deville*, 280 B.R. 483, 492 (B.A.P. 9th Cir. 2002); *see*

*also Heavrin v. Schilling* (*In re Triple S Restaurants, Inc.*), 342 B.R. 508, 513 (Bankr. W.D. Ky. 2006) ("The purpose of Rule 9011 is to impose sanctions in order to deter baseless filings and thus avoid the expenditure of unnecessary resources."). The filing of a petition for relief under the Bankruptcy Code on behalf of a corporate entity without authority has been found to be a violation of Rule 9011. *See In re MPX Tech., Inc.*, 310 B.R. 453 (Bankr. M.D. Fla. 2004) (finding party who was removed as president of corporation by shareholders and nevertheless caused chapter 11 petition to be filed violated Rule 9011 and warranted award of sanctions); *Manfredi III v. D & V Constr., Inc.* (*In re D & V Constr., Inc.*), 150 B.R. 362 (Bankr. W.D. Penn. 1993) (imposing Rule 9011 sanctions against 50% shareholder in debtor who caused petition for relief to be filed without proper authority); *In re AT Engineering, Inc.*, 142 B.R. 990 (Bankr. M.D. Fla. 1992) (imposed Rule 9011 sanctions against attorney who caused chapter 7 petition to be filed on behalf of corporate debtor by president who had no authority to place corporation into bankruptcy).

After a bankruptcy court determines that Rule 9011 has been violated by a party, it has wide discretion in selecting the appropriate sanction. *Jackson v. The Law Firm of O'Hara, Ruberg, Osborne, & Taylor,* 875 F.2d 1224, 1229 (6th Cir. 1989). The two goals of the rule are deterrence and compensation, with deterrence being the primary goal. *Orlett v . Cincinnati Microwave, Inc.*, 954 F.2d 414, 419 (6th Cir. 1992). As such, the "court should impose the least severe sanction that is likely to deter." *Jackson*, 875 F.2d at 1229; *Orlett*, 954 F.2d at 419; *see also In re Triple S Restaurants, Inc.*, 342 B.R. at 513 (sanction imposed is limited to "what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."). One type of sanction which may be imposed is "reasonable attorney fees." *Orlett,* 954 F.2d at 419. Reasonable attorney fees does not necessarily mean actual legal expenses incurred. In determining the amount of attorney fees to impose as a sanction, the court must consider the party's ability to pay. *Jackson*, 875 F.2d at 1230.

Byrd argues in this appeal that the bankruptcy court abused its discretion in imposing sanctions against him, individually, because he asserts that the petition for relief was filed by Horizon on Debtor's behalf, and not by him individually. As such, Byrd argues that pursuant to the

14

Uniform Limited Liability Act, he cannot be held personally liable for the filing, and that he is entitled to indemnification pursuant to Tennessee law and his employment agreement. Byrd contends that any sanctions levied should be levied against Horizon or the Debtor, the parties Byrd asserts were Jones' clients. However, because Arvest Bank did not move for sanctions against Horizon or the Debtor, Byrd argues the order imposing sanctions should simply be reversed.

Byrd also argues that the bankruptcy court abused its discretion in ordering him to pay the full attorney fees and costs incurred by Arvest Bank as a sanction because: (1) Arvest Bank did not submit proper documentation of the fees and costs; and (2) Byrd demonstrated to the court that he has no ability to pay the sanctions.

1.    Byrd Acted in his individual capacity in filing the bankruptcy petition.

In his brief, Byrd argues that in causing the petition for relief to be filed in this case, he was acting on Horizon's behalf, not individually. Therefore, Byrd contends, that he "is protected under the Uniform Limited Liability Act for any liabilities that may arise from his actions on behalf of [Horizon]" and that he "was acting as an officer of [Horizon] and not in his individual capacity," and therefore, "cannot be held personally liable to Arvest according to the Uniform Limited Liability Act."

Contrary to Byrd's assertions, however, the bankruptcy court found that he acted individually in causing the petition to be filed, not on Horizon's behalf. Upon a review of the evidence and Byrd and Jones' testimony, the Panel finds that the bankruptcy court performed an adequate inquiry into the facts presented during the evidentiary hearing and applied the correct legal standard. In doing so, the court determined that Byrd "acted on his own behalf and had no objectively reasonable basis for believing that the filing of the bankruptcy petition was authorized." (Bankr. Ct. Docket # 131, p. 25, Memorandum Opinion dated Aug. 30, 2010). As stated *supra*, the special limited partner had taken all steps necessary to remove Horizon and substitute BCP as general partner of the Debtor, and since BCP was the general partner at the time the bankruptcy petition was filed, Byrd was not authorized by the Partnership Agreement to hire counsel for, or sign the petition on behalf of, the

15

Debtor. Further, the court found that the Partnership Agreement prohibits the general partner from filing a bankruptcy petition on behalf of the Debtor without the consent of the special limited partner, and no such consent was given by the special limited partner. The bankruptcy court did not abuse its discretion in finding that Byrd acted in his individual capacity in filing the chapter 11 petition.

2.      Byrd is not entitled to indemnification.

Byrd next contends that pursuant to his employment agreement with Horizon he is entitled to indemnification for his actions taken in his capacity as Chief Manager of Horizon. The bankruptcy court's memorandum opinion specifically states that it "formed no opinion about whether Mr. Byrd is entitled to indemnification from Horizon or any other entity for his actions in connection with this case as that issue was not presented by the pleadings." (Bankr. Ct. Docket # 131, at 11, n.1) Although Byrd raised the issue of indemnification during his testimony, because Byrd did not raise this issue in his pleadings before the bankruptcy court, it is waived. *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002) (quoting *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997)) ("'It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.'"); *In re Perrin*, 361 B.R. 853, 857 (B.A.P. 6th Cir. 2007).

3.      Byrd has an ability to pay sanctions.

Byrd also argues that the bankruptcy court abused its discretion in not considering his ability, or inability, to pay any financial sanctions. Byrd notes that in the bankruptcy court's memorandum opinion, the bankruptcy court stated that "neither of them has significant income in excess of expenses." Byrd argues that he "did not have the ability to pay financial sanctions at the time of the court's order nor does he have the ability to pay any today."

In response to Byrd's arguments, Arvest Bank reiterates the reasons it cited before the bankruptcy court for giving little or no weight to the financial information Byrd submitted. Arvest Bank submitted various public records to show: (1) that Byrd and his wife engaged in questionable financial transactions related to their residence over a period of years leading to foreclosure upon the

16

residence by Deutsche Bank and then transfer by the bank to Horizon; (2) that Byrd and Horizon engaged in questionable transactions related to transfer of a luxury automobile worth approximately $70,000 to Byrd's wife; and (3) that Byrd's wife also owns another luxury vehicle, a 2008 Mercedes S55 sedan. Arvest Bank argued to the bankruptcy court that Byrd was not credible about his own financial condition because Byrd had been previously convicted of federal wire fraud in 2003, made numerous false statements on the chapter 11 petition and schedules, withheld "crucial information" from Jones, and falsely testified at the March 3, 2010, hearing regarding the reason his prior two personal bankruptcy cases were dismissed. Arvest Bank also notes that the bankruptcy court gave Byrd an opportunity to respond to the information submitted by Arvest; however, Byrd did not file any responsive pleading.

While failure of the court to inquire into a sanctioned party's ability to pay is an abuse of discretion, the Sixth Circuit has also explained:

> [W]hen courts evaluate a [sanctioned party's] ability to pay, the burden of proof is on the sanctioned party to provide evidence of financial status. An unsupported claim regarding financial status is clearly insufficient. Even in the case of a proven total inability to pay, a court may still impose modest sanctions, because the purpose is to deter future misconduct in litigation.
> . . .
>
> [E]ven if [the sanctioned party] had met [its] burden of demonstrating financial status, it was still within the court's discretion to impose the sanction it felt it necessary to serve the cause of deterrence.

*Legair v. Circuit City Stores, Inc.*, 213 Fed. App'x 436, 440 (6th Cir. 2007) (unpub.) (internal citations omitted); *see also White v. General Motors Corp., Inc.*, 908 F.2d 675, 685 (10th Cir. 1990) ("We also hold that even if plaintiffs prove that they are totally impecunious the court may impose modest sanctions to deter future baseless filings."). Moreover, in addition to considering the party's ability to pay, the court may consider other factors such as the "offending party's history, experience, and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, the risk of chilling the type of litigation involved, and other factors deemed appropriate

in individual circumstances." *White*, 908 F.2d at 685; *Robeson Def. Comm. v. Britt* (*In re Kunstler*), 914 F.2d 505, 524-25 (4th Cir. 1990) (applying same factors).

Based upon a review of the entire record in this case, Byrd has not shown that the bankruptcy court abused its discretion in awarding sanctions against him in the amount of Arvest Bank's attorney fees and expenses of $42,299.08. The bankruptcy court considered Byrd's ability, or professed inability, to pay sanctions. Based upon the evidence and testimony at the hearing on this matter, the court did not find Byrd's unsupported claims regarding his financial situation to be credible. The court also considered other permissible factors, including: Byrd's experience and abilities – finding that Byrd had proven himself "extremely sophisticated and resourceful" and "very capable of reading and understanding complex legal documents"; the severity of his violation – finding he "withheld crucial information" from counsel and caused a "great deal of harm" to parties including Arvest Bank, Jones, and the court itself; and the degree of bad faith on Byrd's part, such as his continued attempts to place all blame with Jones and counsel for Arvest Bank. (Bankr. Ct. Docket # 131, pp. 23-25, Memorandum Opinion dated Aug. 30, 2010). Finally, and importantly, the bankruptcy court considered what it determined would be sufficient to deter Byrd from "acting in a similar fashion in the future." *Id*. at 25. The primary goal of Rule 11 sanctions is deterrence, with compensation being the secondary goal. *Orlett*, 954 F.2d at 419. The Panel finds the bankruptcy court did not abuse its discretion in determining that Byrd had an ability to pay sanctions in the amount of $42,299.08.

4. Arvest Bank submitted proper documentation of its attorney fees and costs.

Finally, Byrd asserts that the bankruptcy court abused its discretion in ordering him to pay Arvest Bank's full attorney fees and costs because he contends Arvest Bank did not submit proper documentation of the fees and costs. Arvest Bank provided the bankruptcy court with monthly statements of attorney fees and expenses containing time entries described and recorded in increments of one-tenth of an hour by attorneys and paralegals working for Arvest Bank. These statements were authenticated by the testimony of Arvest Bank's counsel at the hearing on March

18

3, 2010. The Panel finds that the bankruptcy court did not abuse its discretion in ordering Byrd to pay Arvest Bank's attorney fees and costs in full.

## CONCLUSION

For the reasons stated, the Panel affirms the bankruptcy court's order awarding sanctions against Appellant Preston E. Byrd in the amount of $42,299.08.